### ROWSWELL v. EQUITABLE AID UNION.

*(Circuit Court, N. D. New York. 1882.)*

1. **BENEFICIAL UNION—DEFAULT IN PAYMENT BY MEMBER—ESTOPPEL.**

   A party to whom a certificate of membership in an aid union had been duly issued, subsequent to a default in payment, and who thereafter had been twice assessed as a member by the union, must be considered as entitled to the benefits of the union, although he had not paid the $1.30 required to be paid within 30 days after the presentation of his application. The issuing of the certificate and making these assessments estop the union, after his death, from setting up this default.

2. **SAME—UNWARRANTED ASSESSMENT.**

   A failure to pay an assessment levied on a member for a death which occurred prior to the date of his certificate, the assessment being contrary to the plain provisions of a by-law of the union, will not invalidate the claim of his representatives to benefits.

Motion for New Trial.

*Ansley Wilcox,* for plaintiff.

*Benjamin H. Williams* and *W. H. Tennant,* for defendant.

COXE, D. J. This action is brought upon a benefit certificate issued by the defendant. It was tried at the June term and resulted in a verdict for the plaintiff. The defendant now moves for a new trial. But two questions of importance are involved:

1. The assured neglected to pay the sum of $1.30 required to be paid within 30 days after the presentation of his application. The application was dated April 10, 1880. It doubtless was presented to the subordinate union on that day—*First,* because, in the absence of proof to the contrary, the presumption is that it was presented on the day it bears date; and, *second,* for the reason that on that day—April 10th—the medical examiner, Dr. Wage, who was also president of the local union, examined and certified the risk, and indorsed his allowance on the application. The provisions of the constitution, by-laws, and application make the subordinate union the accredited agent of the defendant to receive payments and to make the contract for insurance. The benefit certificate was delivered to the assured by the authorized officers of the defendant on or after May 12, 1880,—32 days or more from the date and presentation of the application. The certificate, then, was issued with full knowledge of the default. When an act of commission or omission is of such a character as to preclude the idea of ignorance, knowledge must be presumed. It is difficult to perceive how the defendant or its authorized agent could have supposed the amount paid, when neither had

received it, and their own books showed that it was not paid. Yet the certificate is issued, reciting, *inter alia,* that the assured *"is a* beneficiary member of Pioneer Union No. 46, E. A U., *in good standing."* Subsequently he was recognized as a member by two assessments being levied upon him.

These acts waived the default. Having formally and deliberately declared the assured to be a member in good standing, and having twice demanded his money as such member, it is too late after his death to assert the contrary. Carried to its logical conclusion, the doctrine contended for would enable the defendant to nullify a certificate after it had for years recognized the holder as a member, and assessed him as such. It is unreasonable to argue that the assured could be a member for the purpose of making contributions to others, but not a member when advantage to him or his beneficiary accrued —a member not to receive, but only to give. The evidence fails to show any act on the part of the defendant, its officers, or agents, indicating that during his life they regarded the assured other than as a member in good standing,—liable to the assessments, and therefore entitled to the benefits incident to membership. The defendant is concluded by its own acts.

2. An assessment occasioned by the death of one Spoor was levied on the fifteenth day of May, 1880. The amount was not paid by the assured. It is argued that the non-payment relieves the defendant from liability. Plaintiff contends, on the contrary, that there was no obligation to pay, and for the reason that Spoor died prior to the date of the benefit certificate. One of the defendant's rules provides that "no member shall be assessed for a death that occurred prior to the date of his benefit certificate."

Defendant seeks to evade the plain provision of this law by proof tending to show that the amount due to Spoor's beneficiary was paid out of a fund in the home treasury, and that the assessment subsequently made was not for the death of Spoor, but to replenish the treasury. In order to make the position tenable, the defendant is compelled to restate the rule as follows: "No member shall be assessed *to pay* a death," etc. But is this view the correct one, even conceding for a moment the rectitude of the foregoing interpretation? 1 cannot think so. If the defendant, by the adoption of such a plan, could legally assess the assured, similar tactics generally employed would reduce the rule quoted to a mere nullity. Except in rare and exceptional circumstances it would never be necessary to assess *to pay a death, eo nomine.*

When the assured joined the union it owed $3,000 to the beneficiary of Spoor. It was expressly stipulated that he (assured) should not be called upon to pay any part of that debt, except as he had already paid in advance to the general fund, and he had a right to rely upon the agreement being faithfully executed. It cannot be possible that, because for its own convenience the defendant advanced the money, the assessment immediately made was any the less for Spoor's death. As it was unlawful to compel assured to contribute, the law did not permit the defendant by indirection to accomplish that result. If a construction can be placed upon the words quoted which gives them force and effect, it should be adopted, rather than one which renders them utterly meaningless and inoperative.

But the defendant does not correctly construe the rule. The meaning of the language, "No member shall be assessed *for* a death," etc., seems very plain. No member shall be assessed *because of*, or *with respect to*, or *concerning*, or *by reason of* a death which occurred prior to the date of his benefit certificate. No matter what the machinery used may be, no money shall be taken from him, directly or indirectly, because of a death which occurred in the union before he became a member of it. The language of the defendant's admission with regard to Spoor, viz., "that the death which was the occasion of the death assessment * * levied May 15, 1880, occurred prior to the date of the benefit certificate," brings this case directly within the rule. No subtilty of reasoning can successfully answer the argument based upon the undisputed facts that the assessment was made because Spoor died, and that his death occurred prior to the date of the benefit certificate in this action.

These conclusions have been reached after a careful examination of the elaborate briefs presented, and it is believed that the result attained must eventually be recognized as correct, and acquiesced in by an organization concerning which its projectors have declared: "It has been the leading aim, as it will be the crowning ambition, of the authors of the Equitable Aid Union to build it upon such a foundation of equity, liberality, and economy that perpetuity must necessarily be inseparable from it."

The motion is denied.