## LOFTIS v. PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA.

No. 2126.   Decided January 18, 1911 (114 Pac. 134).

On Application for Rehearing March 8, 1911.

1. APPEAL AND ERROR—ASSIGNMENTS OF ERROR—NECESSITY. Rulings
   on evidence are waived unless proper assignments of error in
   the court on appeal are made, though the questions were raised
   in the trial court and exceptions properly preserved to the rul-
   ings.   (Page 548.)

2. INSURANCE—ACCIDENT INSURANCE—NONPAYMENT OF PREMIUMS—
   WAIVER. A stipulation in an accident policy that, in case any
   installment of the premium is not paid when due, all rights
   under the policy will lapse, is a provision for the benefit of in-

surer, and it may treat the policy as in force, though cause for forfeiture exists.   (Page 548.)

3. INSURANCE—NONPAYMENT OF PREMIUMS—WAIVER.   An insurer may waive prompt payment of premiums, though payment is of the essence of the contract of insurance, and it may continue to treat policies in force after rights thereunder have lapsed for nonpayment.   (Page 549.)

4. INSURANCE — FORFEITURE — WAIVER — POWERS OF AGENTS.   A waiver of forfeiture of a policy for nonpayment of installments of premiums may be made by an agent of insurer who has either express or implied authority so to do.   (Page 550.)

5. INSURANCE—FORFEITURE—WAIVER—POWERS OF AGENTS.   The implied authority of an agent of an insurance company to waive forfeiture of a policy for nonpayment of premiums must arise out of the relation of the agent to the business affairs of the company, and, where the agent is a general agent or general manager intrusted with the branch of business wherein waivers are usually made, a waiver knowingly and intentionally made is binding on the company, though the policy stipulates that no waiver shall become effective unless made by a particular officer or officers and indorsed on the policy.   (Page 550.)

6. INSURANCE—FORFEITURE FOR NONPAYMENT OF PREMIUMS—WAIVER. Where, on default in the payment of a premium on a policy, insurer attempts to collect the premium or a premium subsequently falling due, though the first default would terminate the insurance, the attempt was an election of insurer to waive the forfeiture.   (Page 551.)

7. INSURANCE—FORFEITURE FOR NONPAYMENT OF PREMIUMS—WAIVER. Where the nonpayment of a premium for a policy or any part thereof terminated the rights of insured under it without any act by insurer, and where no special act of insurer was required to keep the policy in force, insurer by demanding and receiving the past-due and future installments of the premium could continue the policy in force.   (Page 552.)

8. WORDS AND PHRASES—"WAIVER."   A "waiver" operates as an estoppel on the party who waives; but it is not essential to a waiver that a party in whose favor it is made must prove all the elements of an estoppel in pais before he is entitled to avail himself of the waiver.   (Page 553.)

9. CONTRACTS—RESCISSION—WAIVER.   A party to a contract who has the right to terminate it by reason of some default of the other party may waive the right, and, where he does so, the contract remains in force.   (Page 553.)

10. CONTRACTS—RESCISSION—WAIVER.   A waiver of a forfeiture of a contract by reason of some default by a party thereto may

be in express words or by acts and conduct from which a waiver may be inferred or implied.   (Page 553.)

11.  CONTRACTS—RESCISSION—WAIVER.   Where a party to a contract must do a particular thing by a given time to keep the contract in force, and he fails to do so, and the other party after default does something by which he manifests an intention to continue the contract in force, he may be deemed to have waived his right to forfeit the contract for a past default, and the party may treat the contract as in force and perform within a reasonable time the thing required of him.   (Page 553.)

12.  CONTRACTS—RESCISSION—WAIVER—QUESTION FOR JURY.   Whether a waiver of a forfeiture of a contract for default of a party thereto has taken place depends on the facts of the case, and, ordinarily, presents a question of fact, or at least a mixed question of law and fact.   (Page 553.)

13.  CONTRACTS—RESCISSION—WAIVER.   Where a waiver prevents a forfeiture of a contract, the law, ordinarily, permits a liberal construction to be placed on the acts of the party waiving with a view of bringing about a waiver.   (Page 553.)

14.  INSURANCE—ACCIDENT INSURANCE—WAIVER OF FORFEITURE—EVIDENCE.   In an action on an accident policy stipulating for the payment of the premium in monthly installments deducted from the wages of insured, evidence *held* to support a finding that insurer waived forfeiture of the policy for non-payment of installments during months insured did not work or did not earn enough to pay the installment.   (Page 554.)

15.  INSURANCE—NONPAYMENT OF PREMIUMS—WAIVER.   Where neither insurer nor its authorized agent had received an installment of the premium, it could not be supposed that the installment was paid at a time a demand was made by insurer or its authorized agent for an installment subsequently due, and the act in so doing must be treated as a waiver of forfeiture for nonpayment of the installment.   (Page 555.)   ·

16.  INSURANCE—FORFEITURE—WAIVER.   Where an accident policy is kept in force so as to authorize insurer to demand and receive a past-due installment of the premium, the policy must be deemed in force for all other purposes so as to bind insurer thereon.   (Page 556.)

17.  INSURANCE—FORFEITURE—WAIVER—EVIDENCE.   That insurer issuing an accident policy calling for the payment of the premium in monthly installments from the wages of insured by its course of conduct ignored the defaults of installments of premiums on policies held by coemployees of insured is a circumstance from which it may be inferred that it intended to treat insured the :same as it had treated coemployees under similar circumstances. ₍Page 556.)

18. INSURANCE — FORFEITURE — WAIVER — EVIDENCE. On the issue whether insurer issuing an accident policy stipulating for the payment of premiums in monthly installments from the wages of insured waived a forfeiture for non-payment of monthly installments, evidence of insurer's course of conduct in collecting premiums on policies of coemployees of insurer similarly situated was competent to show its position with regard to past defaults of insured. (Page 556.)

19. INSURANCE—FORFEITURE—WAIVER—EVIDENCE. On such issue, evidence of a subsequent payment by the employer of the past-due premium of insured made in the regular course of business was competent. (Page 557.)

ON APPLICATION FOR REHEARING.

20. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ASSIGNMENTS OF ERROR. Unless error is assigned in the Supreme Court on appeal, there is nothing to review.[1] (Page 560.)

21. CONTRACTS—FAILURE TO PERFORM—WAIVER—PLEADING. Where the pleading alleges performance of a contract, it is not necessary to allege a waiver because proof thereof is admissible under the general allegation.[2] (Page 560.)

22. APPEAL AND ERROR—HARMLESS ERROR—ERRONEOUS ADMISSION OF EVIDENCE. Where a party was not prevented from meeting the evidence of waiver at the trial to the same extent as though waiver had been pleaded, the error, if any, in admitting evidence of waiver because not pleaded, was not prejudicial, and under the statute the court could not reverse the judgment on that ground. (Page 561.)

Action by Addie B. Loftis, administratrix of Thomas J. Loftis, deceased, against the Pacific Mutual Life Insurance Company of California.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*C. S. Varian* for appellant.

---

[1] Smith Table Co. v. Madsen, 30 Utah, 297, 84 Pac. 885; Lyon v. Mauss, 31 Utah, 283, 87 Pac. 1014.

[2] West v. Insurance Soc., 10 Utah, 451, 37 Pac. 687; Stephens v. Union, etc., Soc., 16 Utah, 22, 50 Pac. 626, 67 Am. St. Rep. 595.

*E. O. Leatherwood* and *E. A. Walton* for respondent.

The rule is that when a party relies upon a waiver of the performance of an act upon which his right of action depends, such waiver must be specially pleaded. (*Aronson v. Frankfurt Accident P. G. Co.* [Cal.], 99 Pac. 539; *McCormack v. Insurance Co.*, 78 Cal. 468; *German Insurance Co. v. Shader* [Neb.], 96 N. W. 604; *German Ins. Co. v. Daniels* [Tex.], 33 S. W. 550; *Insurance Co. v. Capehart*, 108 Ind. 278; *Cont'l. Ins. Co. v. Vanlue* [Ind.], 26 N. E. 119-122; Cyc. of Law, 923; *Parsons v. Grand Lodge, etc.* [Ia.], 78 N. W. 676; *Knapp v. Brotherhood, etc.*, 117 N. W. 298; *Neuberger v. Robbins* [Utah], 106 Pac. 933; *Shawnee Ins. Co. v. Knerr* [Kan.], 83 Pac. 612; *Insurance Co. v. Dyches*, 56 Tex. 565; Cooley Briefs on Ins. Law, vol. 3, p. 2768; 11 Ency. Pl. & Pr., 422.)

The plaintiff in this case was bound to show by sufficient evidence that the defendant not only dispensed with the limitation of the contract as to the manner in which a waiver should be evidenced, but that in fact the company did waive a compliance with the policy conditions as claimed. And further, where, as in this case, the acts or omissions relied upon to establish a waiver were those of a company agent who was by the insurance contract expressly denied the power to waive any of its provisions, it must be shown, that such agent had subsequently express authority to make the waiver, or that the defendant, *with knowledge of the facts,* ratified his action. Authority to an agent, general or special, in the presence of such a provision as is found in this contract may not be imputed because of the fact that he is authorized to solicit, write, and deliver policies. (*Northern Assurance Co. v. Grand View Building Ass'n,* 183 U. S. 308-361; Cooley's Briefs on Ins., vol. 3, 2499; p. 502-503; *Bank of Commerce v. N. Y. Life Ins. Co.* [Ga.], 54 S. E. 643; *Collins v. Metropolitan Life Ins. Co.* [Mont.], 80 Pac. 609; *Cayford v. Metropolitan Life Ins. Co.* [Cal.], 91 Pac. 266; *McElroy*

*v. Metropolitan Life Ins. Co. of N. Y.* [Neb.], 122 N. W. 27, L. R. A. N. S. 968.

It is purely a question of estoppel which is the basis of waiver—another name for estoppel. If there is no estoppel there can be no waiver in a case of this kind. And further, it must be shown, that the company intentionally made the waiver with knowledge of the circumstnaces. (Bigelow on Estoppel [4th Ed.], 633; *Equit. Life Assurance Society v. McElroy,* 83 Fed. 638. [C. C. A] ; *Bennecke v. Ins. Co.,* 105 U. S. 359; *Thompson v. Ins. Co.,* 104 U. S. 252; Joyce on Insurance, secs. 1356-1360; *Insurance Company v. Doster,* 106 U. S. 30; *Smoot v. Banker's Life Association* [Mo.], 120 S. W. 719; *Schmertz v. U. S. Life Ins. Co.,* 118 Fed. 256 [C. C. A.]; 19 Am. & Eng. Ency. Law [2d Ed.], p. 56, par. bb.; *Ia. Life Ins. Company v. Lewis,* 187 U. S. 335; *James v. Reserve Fund Co.,* 49 S. W. 978; *Lebanon Mut. Ins. Co. v. Hoover,* 113 Pa. State 591.)

Where a member of a benevolent society is in default for non-payment of an assessment, which by the rules of the society forfeits his rights, the forfeiture is not waived by the society sending a notice of the next assessment, and calling attention therein that the prior assessment remained unpaid. (*Schmidt v. Mod. Woodmen of Am.* [Wis.], 54 N. W. 264. See, also, *Rice v. G. L. A. O. U. W.* [Ia.], 72 N. W. 770; *Rice v. G. L. A. O. U. W.* [Ia.], 60 N. W. 726; *Koehler v. Modern Brotherhood of America* [Mich.], 125 N. W. 49.)

Upon all the circumstances, from the most favorable point of view for the plaintiff, if Loftis knew of the listing of his name on September list, it can only be fairly said that the local agent, (assuming for the present his authority) had offered to extend the time of payment of the August premium upon assumption that the September premium would be paid in time, and that Loftis had declined to accept the offer. Such an offer is, of course, made upon the condition that it is accepted and that the money is paid. (*Sullivan v. Conn.*

*Indemnity Association* [Ga.], 29 S. E. 41; *Union Central Life Ins. Co. v. Berlin,* 101 Fed. 673 [C. C. A.].)

It has been held that placing a premium note in the hands of an attorney for collection, after the policy has become void according to its terms for failure to pay the note, will not revive the policy if the collection is not made, especially where the policy provides that no waiver shall be valid unless in writing. (*Iles v. Mut. Reserve Life Ins. Co.,* 50 Wash. 49, 96 Pac. 522; *Lynn v. N. Y. Life Ins. Co.,* 78 Mo. App. 192; *Ware v. Millville Mut. M. & F. Ins. Co.,* 45 N. J. Law. 177; *Cohen v. Cont'l F. Ins. Co.,* 67 Tex. 325, 3 S. W. 296; *Laughlin v. Fid. Mut. Life Ass'n.,* 8 Tex., Civ. App. 446, 28 S. W. 411; *Union Cent'l Life Ins. Co. v. Chowning,* 28 S. W. 117; *Mageachie v. N. Am. Life Ins. Co.,* 23 Canada [S. C.], 148.)

Permission to pay a premium after due date during the life and good health of the insured is not equivalent to the permission to pay after his death. It is well settled that a course of dealing between the parties under which the insurer accepted overdue premium when the insured was in good health, will not give his representative or himself the right to pay or tender his premiums after maturity, and he is in a bad state of health or had died. (*Thompson v. Insurance Co.,* [Tenn.], 6 L. R. A. [N. S.] 1042; *Carlson v. Supreme Council, etc.,* 115 Cal. 466, 47 Pac. 375; Bliss Life Insurance, sec. 316-355; Bacon on B. & L. Insurance, sec. 370; Cooley's Briefs, etc., vol. 3, p. 2709; Richards on Ins. Law [3d Ed.], sec. 139, p. 174.)

So indulgence on three occasions are not sufficient. (*Frazer v. Home Life Ins. Co.,* 45 Atl. 1047; *Lantz v. Vermont Life Ins. Co.,* 21 Atl. 80; *Haupt v. Phoenix Mut. Life Ins. Co.,* 35 S. E. 342.) Moreover, a custom to waive in favor of persons in good health, does not tend to prove a custom to waive in favor of those who are sick. And by the same token, there could be no custom of waiver of such conditions to be given effect after death, when the contract had terminated. (*Smith v. Sovereign Camp. W. & W.,* 77 S. W. 862; *Lewis v. Phoenix Iife Ins. Co.,* 44 Conn. 72; *Nat'l*

*Mut. Benefit Asso. v. Miller,* 85 Kentucky 82, 2 S. W.
900; *Richardson v. Mut. Ins. Co.,* 18 S. W. 164; *Richen-
bach v. Ellerbe,* 22 S. W. 573; *Elder v. A. O. U. W.,* 82 N.
W. 988.)

Notice could serve no useful purpose because the assured
has actual knowledge that he has not made the payment and
that his policy is no longer in existence. (*Roberts v. Aetna
Life Ins. Co.,* 212 Ill. 382, 72 N. E. 363; *McHahon v.
Travelers Ins. Co.,* 77 Ia. 229, 42 N. W. 179-181; 19 Am.
& Eng. Ency. of Law [2d Ed.], 47.)

The order in this case provides that the failure by the
employer from any cause to make the required deductions
and that if they are not made the policy shall without notice
of any kind be void as respects the corresponding and all sub-
sequent insurance periods. (Cooley's Briefs on Law of Ins.,
vol. 3, p. 2285; *Walker v. Pac. Mut. Life Ins. Co.,* 67 Ark.
147, 53 S. W. 675, 83 S. W. 1132; *Landis v. Standard L.,
etc., Co.,* 6 Ind. App. 502; 33 N. E. 989; *Bane v. Trav.
Ins. Co.,* 85 Ky. 677, 4 S. W. 787; *Hagins v. Aetna Life
Ins. Co.,* S. C. 51; S. W. E. 683-4; *Employers' Liability,
etc., Co., v. Rochelle,* 13 Tex. Civ. App. 35 S. W. 869; *Mc-
Mahon v. Trav. Ins. Co.,* 77 [Ia.], 229, 42 N. W. 179;
*Lyon v. Trav. Ins. Co.,* 55 Mich. 141, 20 N. W. 829; *York
v. Ry. O. & E. H. Assn.* [West Va.], 41 S. E. 227; *Reid
v. Trav. Ins. Co.* [Ga.], 43 S. E. 433; *Brown v. Pac. Mut.
Ins. Co.* [Mo.], 82 S. W. 1122; *Aetna Life Ins. Co. v.
Ricks* [Ark.], 94 S. W. 923; *Sewell v. Cont. Cas. Co.*
[Miss.], 46 So. 714; Cyc., vol. 1, p. 242.)

A written and express contract cannot be controlled or
varied or contradicted by a usage or custom. (The Reeside,
Fed. Cases No. 11657; *De Witt v. Berry,* 134 U. S. 312;
*Union Cen'l Life Ins. Co. v. Chaowning* [Tex.], 28 S. W.
119; 19 Am. & Eng. Ency. of Law, 56.)

RESPONDENT'S POINTS.

There is a clear conflict among the authorities as to
whether in insurance cases waiver may be proved under a

plea of performance. Our own court has settled the matter for this jurisdiction to the effect that it is not necessary. (*West v. Insurance Co.*, 10 Utah, 442; *Stephens v. Union Assurance Co.*, 16 Utah, 22.) California has repeatedly held our way upon the question. (*Berliner v. Travelers' Ins. Co.*, 53 Pac., 922, 924; *Richards v. Ins. Co.*, 89 Cal. 170, 26 Pac. 762.) Missouri and Virginia also hold with us. (*James v. Ins. Co.*, 49 S. W. 978; *West Rockingham Ins. Co. v. Sheets*, 26 Gratt, 854.)

Moreover, the defendant produced the very evidence which established the waiver. Plaintiff was thus entitled to avail himself of the same without a plea. ( *Grand Lodge, etc., v. Bunkers*, 23 Ohio Circuit Court Reports 487; 3 Cooley Ins. Briefs, 2770.)

Again where the real question in controversy has been fully and fairly tried the court will not reverse for such an objection which may be avoided by amendment of pleadings, but will exercise itself the power of amendment if necessary. (*Ware v. Millville, etc., Co.*, 45 N. J. Law 177; See, also, sec. 3002, Compiled Laws of Utah 1907.)

Persons can no more make binding provisions in a written contract which will preclude them from altering them by parol than can a legislature enact an irrepealable statute, and this provision itself may be waived by parol. (*Lamberton v. Connecticut Fire Ins. Co.*, 39 Minn. 129; *Renier v. Dwelling-House Ins. Co.*, 74 Wis. 79; *Wilcotts v. N. W. Mutual Fire Ins. Co.*, 81 Ind. 308; *Steen v. Niagara, etc., Co.*, 89 N. Y. 26; *Eastern R. R. Co. v. Life Ins. Co.*, 105 Mass. 570; *American Ins. Co. v. Green*, 57 Ga. 469; *Ins. Co. v. Earl*, 33 Mich. 143; *Dale v. Cont. Ins. Co.*, 95 Tenn. 38; *German Ins. Co. v. Humphrey* [Ark.], 35 S. W. 428; *German Ins. Co. v. Gray* [Kansas], 8 L. R. A. 70.)

Where the general agent of the company has been in the habit of receiving premiums after due and the company has ratified his act by accepting the same this is sufficient evidence of the authority of the agent to extend time of payment of premiums. (*Wyman v. Phoenix Ins. Co.*, 6 N. Y.

Suppl. 289; *Palmer v. Ins. Co.*, 84 N. Y. 63; *Deen v. Ins. Co.*, 62 N. Y. 642.)

Evidence that an agent has frequently granted an extension to other policy-holders is admissible to show authority to extend credit, although the policy provides that none but certain officers have such authority. (*Washington Life Ins. Co. v. Whetzel* [Tex.], 72 S. W. 436.)

Evidence that a collection agent had accepted overdue premiums in a few instances is admissible to show a course of dealing and as bearing on the question of the authority of the agent to extend credit, and the question of authority is for the jury, notwithstanding the policy provided that agents were not authorized to extend the time. (*Dunn v. Ins. Co.* [N. H.], 39 Atl. 1075.)

A general agent may waive a forfeiture notwithstanding such restrictive clause in the policy. ( *James v. Mutual Reserve Association,* 49 S. W. 978; *Leven v. Hoover* [Pa.], 57 A. R. 511; *Phoenix Ins. Co. v. Doster,* 106 U. S. 31, 33; 2 Joyce on Ins., 1356; See, also, *Lamberton v. Ins. Co.,* and following cases cited *supra.*)

Evidence of a general habit of Insurance Company to receive over-due premiums is also admissible on question of forfeiture. (*Girard Life Ins. Co. v. Company,* 86 Pa. St. 236; *Estees v. Ins. Co.* [N. H.], 33 Atl. 575.)

The habit of receiving premiums after due operates as waiver of time as of the essence of the contract, and hence a reasonable time is given in which to pay the premium. (*Cotton States Life Ins. Co. v. Lester,* 62 Ga. 247.)

The practice of the company not to exact prompt payment indicates a waiver of prompt payment. (*Thompson v. St. Louis, etc., Co.,* 52 Mo. 469; *Unsell v. Hartford, etc., Ins. Co.,* 32 Fed. 443; *Loughbridge v. Iowa, etc., Association* [Ia.], 50 N. W. 568.)

The authorities seem to be in practical harmony on this matter of election and waiver by inconsistent conduct. (*Conrow v. Little,* 115 N. Y. 387, 5 L. R. A. 693; 2 Joyce, 1371.) The forfeiture of a policy for the non-payment of a premium note is inconsistent with a demand for its payment.

(*Marden v. Hotel Owners' Ass'n.,* 85 Ia. 585.)   Where a premium has not in fact been paid to the company but it treats the policy as being in force until a loss, the jury may infer a waiver.   (*Mauck v. Merchants, etc., Co.* [Del.], 54 Atl. 952.)

The sending of a notice to pay an assessment within thirty days in order to maintain his standing in the order was held to operate as an extension of time within which to pay and to waive a forefeiture for the previous delinquency.   (*Mc-Gowan v. Legion of Honor* [Ia.], 67 N. W. 89; See, also, *Stylow v. Wisconsin, etc., Mut. Life Ins. Co.* [Wis.], 34 N. W. 151; *Odd Fellows, etc., Ass'n. v. Sweetser* [Ind.], 19 N. E. 722; *Roswell v. Equitable Aid Union,* 13 Fed. 840; *Cumberland, etc., Co. v. Mitchell,* 48 Pa. St. 374; *Elmer v. Mut. Benefit, etc.,* 19 N. Y. Supp. 289; affirmed 34 N. E. 512; *M. W. A. v. Anderson,* 71 Ill. App. 351; *Farmers' Alliance Ins. Co. v. Ferguson* [Kan.], 98 Pac. 231; see, also, *Moreland v. Union Central Life Ins. Co.* [Ky.], 46 S. W. 516; *Union Central Life Ins. Co. v. Moreland,* 56 S. W. 653; *National Life Ins. Co. v. Reppond* [Tex.], 81 S. W. 653; *Union Central Life Ins. Co. v. Spinks* [Ky.], 83 S. W. 615; *Modern Woodmen of America v. Lane* [Neb.], 86 N. W. 810.)

The contention that a waiver must have the elements of an estoppel in cases of this kind cannot be sustained.   (*Ins. Co. v. Kuhlman* [Neb.], 78 N. W. 936; *Bloom v. Ins. Co.,* 62 N. W. 810; *Lyons v. Travelers Ins. Co.* [Mich.], 20 N. W. 82.)

If the death occurred before the expiration of a reasonable time to make payment or tender it is immaterial that the premium was not in fact paid, and the payment may be made in such cases after death or merely abated in the recovery.   (*Patten v. Casualty Co.* [Tex.], 104 S. W. 305; *Mayer v. Ins. Co.,* 38 Ia. 304; *Odd Fellows, etc., v. Sweetser,* 19 N. E. 722; *New Eng., etc., Co. v. Springgate,* 112 S. W. 681; *Carson v. Ins. Co.* [Ia.], 17 N. W. 650; *Ins. Co. v. Lester,* 62 Ga. 247; *Watson v. White,* 38 N. E. 902, 906.)

FRICK, C. J.

This is an action to recover on an accident policy issued by the appellant to one Thomas J. Loftis, hereafter called the "insured," whose death was caused by an accident contemplated by the terms of the policy. The action was brought by respondent, as administratrix of the estate of the insured, for the benefit of herself, as the beneficiary named in the policy. In her complaint she in substance alleged the issuance of the policy, the accidental death of the insured, and that all conditions of the policy had been performed by him. The principal defense interposed by appellant, and the only one material now, was to the effect that the conditions of the policy with regard to the payment of the premium had not been complied with, and that hence the rights of the insured thereunder had lapsed or were forfeited at the time of the accident causing his death. The application, which was made a part of the policy, after stating the name and place of residence of the insured, recited that he was employed by the Rio Grande Western Railway Company as locomotive engineer; the amount of the monthly wages earned by him; the amount of insurance covered by the policy, to wit, two thousand dollars; and the amount of the premium to be paid. It also contained the following provisions: "All premiums to be paid by equal monthly installments from my wages for the months of June, July, August, September, 1908, in general manner and form as shown by printed blank form of order on the back of this application. . . . I understand that no alteration or waiver of the conditions or provisions of any policy is valid unless made in writing at the company's home office and signed by the president or vice-president and also secretary or assistant secretary, and that no notice to or knowledge of any agent or any other person of anything not written in this application is to be held to effect a waiver or estoppel upon the company or affect the provisions of any policy. Policy dated Helper, the 28th day of May, 1908."

The material portions of the order referred to are as follows:

"For value received I hereby authorize my employer ........ to pay to the Pacific Mutual Life Insurance Company of California or its authorized general agent, as follows:

First premium, ........ dollars, to be paid and deducted from my wages for the month of ........ 19....

Second premium, ........ dollars, to be paid and deducted from my wages for the month of ........ 19....

Third premium, ........ dollars, to be paid and deducted from my wages for the month of ........ 19....

Fourth premium, ........ dollars, to be paid and deducted from my wages for the month of ........ 19....

The first premium shall be the premium for two months, the first insurance period under policy of insurance issued or to be issued to me by said insurance company and bearing even date and number herewith; the second premium shall be the premium for two months, the second insurance period under said policy; the third premium shall be the premium for three months, the third insurance period under said policy; the fourth premium shall be for five months, the fourth insurance period under said policy, and each premium is to apply only to its corresponding insurance period.

No claim shall arise for any effect of any injury received or illness commencing during the second or third or fourth insurance period, for which the respective premium has not been actually paid. . . .

Failure by said employer from any cause to make any deduction as above provided is at my risk, and if any deduction is not made as above provided, said policy shall, without notice of any kind, be void as respects the corresponding and all subsequent insurance periods.

I will not revoke, cancel or annul this order."

The policy also contained the following stipulations:

"No alteration or waiver of the conditions or provisions of this policy or said application shall be valid unless made in writing at the company's home office and signed by the president or vice-president and also secretary or assistant secretary; nor shall notice to or knowledge of any person of anything not written in said application be held to effect a waiver or estoppel upon the company or affect the provisions of this contract.

Failure on part of the insured or any one claiming under this policy to comply with any of the foregoing agreements will render this policy void."

The parties to the action in substance stipulated that the first installment of the premium of eleven dollars and seventy

cents was deducted from the wages earned by the insured
for the month of June, 1908, and was paid to appellant;
that a similar amount was deducted and paid out of his
wages for the month of July as payment for the second
installment of the premium; that the insured did not earn
any wages for the month of August, and no premium was
paid for that month; that in the month of September, 1908,
the insured earned only eight dollars and ninety-eight cents,
which was paid to him by the railroad company; that dur-
ing the month of October, 1908, the insured earned in excess
of the amount due on the defaulted installments, of which
earnings twenty-three dollars and forty cents was, by the
railroad company, deducted and remitted to the appellant,
which was the amount then due on the policy. We remark
that the foregoing amount was paid after the insured was
accidentally killed. It was further made to appear from
the evidence that the insured was killed on the 14th day of
October, 1908; that the first insurance period under the policy
commenced May 28, 1908, and ended on July 28th follow-
ing; that the second insurance period ended on the 28th day
of September, 1908; that the insured was killed during the
third insurance period for which the premium had not been
paid when it became due and payable nor during the lifetime
of the insured. Counsel for appellant therefore insists that
pursuant to the terms of the contract all insurance and
rights under the policy had lapsed or were forfeited at the
time of the insured's death, while counsel for respondent
contended that appellant by reason of its conduct, presently
to be noted, had elected to continue the policy in force and
hence waived the forfeiture provided for therein.

The facts upon which respondent's counsel rely, in sub-
stance, are: That it was agreed between appellant and the
insured that the premium due on the policy was to be paid
in installments as follows: "Eleven dollars and seventy
cents to be paid and deducted from my wages for the month
of June;" that a similar amount was to be deducted and
paid in the same manner for the months of July, August,

and September, 1908; that for the purpose of collecting
the installments of the premium as aforesaid appellant for-
warded to the railroad company, the employer of the insured,
what is called a "paymaster's list," on which the names and
the amounts due from each of the employees of the railroad
company who had policies similar to the insured were en-
tered; that such a list was forwarded each month to the
railroad company prior to its regular monthly pay day, which
occurred about the 10th day of each month, at which time
the wages earned during the preceding month were paid;
that the lists forwarded for June and July, 1908, among
others, contained the name of the insured and the amount
to be deducted from his wages. It is also conceded that
the several amounts of his wages called for in the lists were
deducted and paid to appellant, and that the same constituted
payment of the installments of the premium payable for said
months. The lists for August and September were also for-
warded to the railroad company. On the list for August the
railroad company made a note opposite the name of the in-
sured, "no time," and the September list contained the
statement "not enough time." In the November list oppo-
site the name of the insured appears the entry "refund
twenty-three dollars and forty cents," which, according to
the evidence, indicated that the twenty-three dollars and forty
cents which had been remitted by the railroad company, as
stated in the stipulation to which we have already referred,
was refunded or returned by appellant. It also appeared
that the amount that was earned in September was not
enough to pay the premium due for that month and for
that reason alone had been paid to the insured. It was fur-
ther shown that there were at least three others who carried
accident insurance with appellant on the same plan as the
insured, and who were on the same lists with him, who had
defaulted in making their monthly payments of premiums
for the reason that they had not earned sufficient money
during several of the months to pay the installments due on
their policies; that in all of these cases the appellant re-
ceived and retained the installments past due after default

and continued such policies in full force by continuing to receive the installments as they fell due thereafter, although all of these policies by their terms had lapsed or become non-enforceable for nonpayment of the premiums when due. All this was known to the railroad company; but, in making the deductions from the October wages earned by the insured before he was killed, said company had no authority to do so except the fact that the appellant had forwarded the paymaster's lists to the railroad company as aforesaid, and in view of all the circumstances, and for that reason had assumed that the defaults for the months of August and September were treated by the appellant in the case of the insured the same as in the other instances to which we have referred. The railroad company after the death of the insured deducted from the wages due him out of his October earnings the whole amount of the premiums past due on his policy, and remitted the amount to appellant in a check to which was also included installments due on other policies held by some of its employees who were coemployees of the insured during his lifetime. As already indicated this amount was thereafter "refunded" or returned by appellant. Tender of the amount was, however, again made to appellant but was refused. The evidence was to the effect that the so-called paymaster's lists were returned by the railroad company to the appellant after the deductions of the premiums of those who had funds to their credit for the preceding month were made in case of no funds after such fact had been noted on the lists. The evidence was also sufficient to justify a finding by the jury that the list containing the amounts to be deducted for the month of August, with the notation thereon that the insured had "no time" for that month, was in the possession of the appellant at least eight days before it forwarded the September list to the railroad company upon which the name of the insured appeared with the amount of the premium to be deducted as usual.

Upon substantially the foregoing facts, the court submitted the case to the jury, who returned a verdict for re-

spondent. The court entered judgment on the verdict, and appellant presents the record for review.

While counsel for appellant has assigned a large number of errors, he has practically reduced them to four in his brief, which, in substance, are: (1) That the court erred in admitting the evidence with regard to waiver because no waiver was pleaded; (2) that there was no waiver as a matter of law; (3) that there was no competent evidence of a waiver; and (4) although it be conceded that the evidence adduced was competent, yet it was wholly insufficient to authorize a finding that there was a waiver.

With respect to the first assignment, we remark that counsel for respondent insist that it is not reviewable by us because no proper assignment presenting the question for review is made. Upon an inspection of the assignments, we have not found any by which the question is presented for review, and hence we cannot consider it. It is true that counsel in the trial court had raised the question and properly preserved his exceptions to the court's rulings, but that is not enough to authorize us to review an alleged error. Counsel may and often do waive the right to review exceptions made in the court below when they come to this court, and, unless they make proper assignments of error in this court, they are conclusively presumed to have waived the right to a review of all such alleged errors.

Next it is urged that, in view of the undisputed facts, there is no waiver in this case as a matter of law. The waiver, if any exists in this case, must arise out of appellant's acts and conduct in treating the policy under which the claim in this case is made as in force and as a valid and subsisting contract of insurance after the insured had made default of the August if not the September installment of the premium due on the policy. While it is true that the contract of insurance in this case provided that, in case any installment of the premium was not paid when due, all rights under the policy lapsed or the policy ceased to be effective, yet such a provision was for the benefit of appellant, and it had the undoubted

right to treat the policy as in force, although cause for forfeiture existed. That insurance companies may waive prompt payment of policies, although such payment is of the essence of the contract of insurance and **3** may continue and treat policies in force after all rights thereunder had lapsed by reason of a provision therein that nonpayment of the premium or any part thereof shall cause the policy to become void and of no force or effect, is too well settled to admit of dispute. The very authorities cited by appellant's counsel not only recognize the doctrine, but they enforce it.

In 2 Joyce on Insurance, cited by counsel for appellant, the author, in section 1356, states the rule in the following language:

"If an insurance company or its authorized agent, by its habits of business, or by its acts or declarations, or by a custom to receive overdue premiums without objection, or by a custom not to exact prompt payment of the same, or, in brief, by any course of conduct, has induced an honest belief in the mind of the policy holder, which is reasonably founded, that strict compliance with the stipulation for punctual payment of premiums will not be insisted upon, but that the payment may be delayed without a forfeiture resulting therefrom, it will be deemed to have waived the right to claim the forfeiture, or it will be estopped from enforcing the same, although the policy expressly provides for forfeiture for nonpayment of premiums as stipulated, and even though it is also conditioned that agents cannot waive forfeitures." Further on, in section 1379, it is said: "As a general rule, if the company has treated the policy as valid, and has sought to enforce payment of the premium, or has otherwise with knowledge recognized, by its own acts or declarations, or those of its agents, the policy as still subsisting, it waives thereby prior forfeitures."

In the case of *Schmertz v. United States Life Ins. Co.,* District Judge Bradford, after discussing to some extent what may not constitute a waiver of a forfeiture, at page 256 of 118 Fed., and page 110 of 55 C. C. A., states the rule now under discussion in the following words:

"It is well settled that forfeiture under a clause in a policy of life insurance, providing for it in case of nonpayment of premiums at maturity, and declaring want of authority in agents of the insur-

er to receive payment thereafter or to waive forfeiture, may be waived by the insurer either expressly or by implication; and it is impliedly waived where the conduct of the insurer in dealing with the insured and others similarly situated has been such as reasonably to induce a belief on the part of the insured that, if the premium be not paid by the stipulated date, a forfeiture will not be enforced, if payment be made within a reasonable period thereafter. (*Insurance Co. v. Doster*, 106 U. S. 30, 1 Sup. Ct. 18, 27 L. Ed. 65.) But it is equally true that the mere granting of indulgence to the insured beyond the time stipulated in the policy for payment of the premium in one year does not bind the insurer to grant a similar indulgence in a subsequent year."

In 19 Cyc. 56, after stating what is ordinarily insufficient to constitute a waiver, it is said:

"But an insurer will not be permitted to make a show of continued leniency or a pretense of liberality, repeated with such uniformity as to put the insured off his guard, and afterwards by a sudden change in its course of conduct, without notice to the insured, declare a forfeiture when the latter is helpless to avert the consequences. And the rule has been held not to be altered by the fact that the insured was in bad health or dead at the time payment was made, if the company's course of conduct was such as to have led him to believe that the overdue premium would be received notwithstanding his sickness, or death. . . . Where, subsequent to the accrual of a forfeiture, under the conditions of a life policy, for nonpayment of premiums, the insurer, with knowledge of the facts, by its own acts or those of its agents recognizes the contract as still subsisting, and manifests an intent not to take advantage of the forfeiture, the court will be justified in finding a waiver of the forfeiture. In such cases the liability of the insurer accrues on the death of the insured, and it is too late afterwards to claim for the first time the benefit of a forfeiture."

The foregoing texts are supported by what we deem to be the overwhelming weight of authority. But the weight of authority is also to the effect that such waiver may be made by an agent of the company who has either **4, 5** express or implied authority to do so. Implied authority must, however, arise by virtue of the relation of the agent to the business affairs of the company. If the agent be a general agent, or a general manager intrusted with that branch of the business wherein waivers are usually made, a waiver, if knowingly and intentionally made, is binding on

the company, although there is a provision in the policy that no waiver is to become effective unless made by some particular officer or officers and unless indorsed on the policy. (*Dale v. Continnetal Ins. Co.*, 95 Tenn. 38, 31 S. W. 266; *Firemen's Fund Ins. Co. v. Norwood*, 16 C. C. A. 136, 69 Fed. 71; *Insurance Co. v. Norton*, 96 U. S. 234, 24 L. Ed. 689; *Insurance Co. v. Wilkinson*, 13 Wall. 222, 20 L. Ed. 617; *Wyman v. Phoenix Mutual Life Ins. Co.*, 53 Hun 637, 6 N. Y. Supp. 289; *Washington Life Ins. Co. v. Berwald*, [Tex. Civ. App.], 72 S. W. 436; *Dunn v. National Life Ins. Co.*, 69 N. H. 224, 39 Atl. 1075; *James v. Mutual Reserve Fund Life Assn.*, 148 Mo. 1, 49 S. W. 978.)

The following cases are to the effect that, in case of a default in payment of a premium the insurance company makes an attempt to collect such premium or a premium falling due after the first default, in case such default would terminate the insurance such an attempt may be considered as evidence indicating an election on the part of the company to waive the forfeiture and to keep the policy in force. (*Palmer v. Phoenix Mutual Life Ins. Co.*, 84 N. Y. 63; *Dunn v. National Life Ins. Co.*, 84 N. Y. 63; *Stylow v. Wisconsin Odd Fellows Mut. L. Ins. Co.*, 69 Wis. 224, 34 N. W. 151, 2 Am. St. Rep. 738; *Modern Woodmen of Am. v. Anderson*, 71 Ill. App. 351; *New England Mut. L. Ins. Co. v. Springate*, 129 Ky. 627, 112 S. W. 681, 113 S. W. 824, 19 L. R. A. [N. S.] 227; *Rowswell v. Equitable Aid Union* [C. C.], 13 Fed. 840.)

We have cited only a small number of the cases that could be cited upon the foregoing proposition. It is true that there are some cases which, apparently, are to the contrary, of which *Collins v. Metropolitan Life Ins. Co.*, 32 Mont. 329, 80 Pac. 609, 1092, 108 Am. St. Rep. 578; *McElroy v. Metropolitan Life Ins. Co.*, 84 Neb. 866, 122 N. W. 27, 23 L. R. A. (N. S.) 968, and *Iles v. Mutual Reserve Life Ins. Co.*, 50 Wash. 49, 96 Pac. 522, 18 L. R. A. (N. S.) 902, 126 Am. St. Rep. 886, are prominent types.

Upon a careful examination of the foregoing and similar cases, it will, however, be found that the agent or person who, it was claimed, waived the forfeiture, had neither the express nor implied authority to do so. In other words, the alleged waiver was attempted to be made by one who did not represent the company for that purpose or by one who was not authorized to transact any business for it from which such authority could be implied. In the case at bar, the method agreed upon by the parties of collecting the premium was such that appellant must have known that those who obtained insurance from it might, and probably would, in some months fail to earn the amount of the premium or fail to remit. For that reason appellant sought to protect itself by placing the responsibility upon the insured to see that the deductions were made, and in case of nonpayment, by providing that the policy lapsed and was thereafter of no force or effect. In this connection it is very important to remember that appellant left an easy way open for it to keep the policies in force, although prima facie forfeited for nonpayment of a premium, by not requiring a formal reinstatement of those insured in case of lapsed policies. No act of appellant was required to terminate the policy in question. The nonpayment of the premium or any part thereof of itself terminated the rights of the insured under it. Upon the other hand, no special or formal act of appellant was required to keep the policy in force. Appellant by demanding and receiving the past due and the future installments of the premium could continue in force lapsed policies. This is not seriously disputed by counsel, but he insists that an election to keep a policy in force, or to waive a forfeiture, must, nevertheless, be made after the party making the election has knowledge of all the facts which would affect it in case of a waiver. In other words, he insists that an election, if one be made, must be knowingly and intentionally made. Moreover, that the waiver must amount to an estoppel in pais. That is,

if there be no estoppel, there is no waiver. While some cases go to the extent of holding that unless the facts also constitute an estoppel *in pais* there is no waiver, in our judgment both reason and the weight of authority is against this view. The true distinction between an estoppel *in pais* and a waiver is pointed out by Mr. Justice Lorigan of the Supreme Court of California in the case of *Knarston v. Manhattan Life Ins. Co.,* 140 Cal. 57, 73 Pac. 740, and is also stated by Mr. Justice Sullivan in the case of *Home Fire Ins. Co. v. Kuhlman,* 58 Neb. 488, 78 N. W. 936, 76 Am. St. Rep. 111. No doubt a waiver operates as an estoppel upon the party who waives; but it is not essential to a waiver that a party in whose favor it is made must prove all the elements of an estoppel *in pais* before he is entitled to avail himself of the waiver. A party to a contract who has the right to terminate it by reason of some default by the other party may, nevertheless, waive such a right, and, if he does so, the contract remains in full force and effect. Such a right may be waived in express terms or by the acts and conduct of the party from which a waiver may be inferred or implied. If by the terms of a contract one party to it is required to do a particular thing by a given time to keep the contract in force, but fails to do so, and the other party, after the default of the first party, does something by which he manifests an intention to continue the contract in force, he may be deemed to have waived his right to terminate the contract for a past default, and the first party may treat the contract as still in force, and by reason thereof the law gives him a reasonable time thereafter to do the thing which was omitted by him. Whether a waiver has taken place or not ordinarily depends upon the peculiar facts and circumstances of a given case, and, in most instances, presents a question of fact rather than of law, or at least a mixed question of law and fact. Where a waiver prevents a forfeiture, the law ordinarily permits a liberal construction to be placed on the acts of the party waiving with the view of bringing about a waiver of

,such a forfeiture. In the cases cited herein, a large number of concrete instances are given where the foregoing doctrine is illustrated and applied.

Were the acts and conduct of appellant, after the default of payment by the insured, such as would authorize reasonable men to infer therefrom that appellant intended to and did elect to keep in force the policy sued on, and hence had waived a forfeiture of the rights of the insured under it? What are these acts? In the light of the evidence, it was proper to infer that the appellant had either actual or constructive knowledge of the following facts, namely: That the insured was a wage-earner, and that he, like his coemployees, would pay the premium on the insurance policy out of his monthly earnings; that the coemployees had not in each month earned sufficient to pay the premiums promptly when due; that in several instances default of payment had occurred prior to the default of the insured which appellant had disregarded and had demanded and received past-due installments of the premiums and had treated them as though they had been timely paid; that the insured probably knew of appellant's conduct in that regard, and also how his coemployees were treated, and hence he had some grounds to infer what his treatment under similar conditions would be; that the insured had made default in making the August payment on his policy when appellant forwarded the paymaster's list, on which appellant in the usual way demanded payment of the September installment coming due on the policy of the insured; that the nonpayment of the August installment *ipso facto* terminated the rights of the insured under the policy unless appellant elected to keep it in force for his benefit; that in making demand for payment of the past-due installment after the policy by its terms had lapsed might be construed by the insured as an election by the appellant to keep the policy in force, and that he would have a reasonable time thereafter, within which to pay the past-due premium, and that payment might be made in the usual way, as was done in the case of his coemployees.

The contention that the appellant did not know that the insured had made default in his August payment when the list for September was forwarded to the railroad company is, to our minds, clearly untenable. This contention is, in our judgment, well answered in the case of *Rowswell v Equitable Aid Union, supra,* where, under somewhat similar circumstances, District Judge Coxe meets a similar contention in the following language: "When an act of commission or omission is of such a character as to preclude the idea of ignorance, knowledge must be presumed. It is difficult to perceive how the defendant or its authorized agent could have supposed the amount was paid, when neither had received it." No doubt it might be that an agent who had no authority to collect could nevertheless have done so or could have omitted to do so without imputing knowledge of either fact to the corporation. Can it, however, also be said that, where an agent is conducting the business of the corporation of making its collections in the ordinary and usual way, who is the representative of the corporation in that branch of its business, knowledge of the act or omission of such an agent with regard to whether payment had been made or not is not imputable to the corporation itself? When the insured failed to make the August payment, it was a proper inference, under the circumstances, that appellant had knowledge of that fact, and when it, in the regular way, undertook to collect an installment of the premium after default of payment of a prior one, it was likewise proper to infer that it did so with the intention of keeping the policy in force, and that it had waived its right to forfeit the rights of the insured by reason of the nonpayment of the past-due premium. As we cannot assume that appellant acted in ignorance, so also we are unwilling to assume that its only object was to keep the policy in force for its own and not for the benefit of the insured. Upon this subject the language of Judge Coxe in the case already referred to is again pertinent. He says: "It is unreasonable to argue that the assured could be a member for the purpose of making contributions to others, but not a member when

advantage to him or his beneficiary accrued—a member not to receive, but to give only."

If the policy was in force so as to authorize appellant to demand and receive the premium due for August, it must likewise be held to have remained in force for all other purposes. Appellant could have treated the policy at an end after the first default. Had it refrained from attempting to collect past-due premiums, no one could, with any show of reason, contend that there was any further liability under the policy in view of its terms after default of payment of any part of the premium. But when appellant, by its acts and conduct, apparently elected to keep the policy in force for the purpose of collecting premiums, the law will require it to keep it in force for all purposes. The fact that appellant, by its course of conduct, ignored the defaults of payments of premiums on policies held by some of the coemployees of the insured, is a strong circumstance from which it may be inferred that it intended to treat the insured the same as it had treated some of his coemployees under similar circumstances. When we say under similar circumstances, we do not mean that there is any evidence that appellant recognized the policy as in force by paying a loss under circumstances similar to those disclosed by the evidence in this case; but what we mean is that the evidence is uncontradicted that the appellant ignored the defaults of payment of the premiums upon the policies of at least three of the coemployees of the insured prior to his default, and subsequently demanded and received payment of the premiums in the regular course of business, and thereafter apparently treated such policies as in full force and effect. If, under such circumstances, policies were to be treated as in force in cases where no liability had arisen, we think that justice and fairness require that they be deemed as in force in case of an accident. In this regard appellant could not have been misled or deceived. It knew the character of the insurance and the nature and dangerous calling of the insured. It was possible, if not probable, that an accident might happen at any

time by which the insured might be injured.  In choosing
to keep the policy in force by seeking payment for the past-
due premiums after the policy had by its terms lapsed, appel-
lant assumed the risk that it might at any time be called
upon to answer for the consequences of the very accident
which resulted so disastrously to the insured.  If, under the
law, the appellant did not assume such risk, if the finding
of the jury that it elected to keep the policy in force is right,
then the law is a mere delusion.  As was well stated by Mr.
Justice Hobson in *New England Mutual Life Ins. Co. v.
Springate, supra,* upon a similar question that:

"To allow the company to treat the policy as valid after the
right to forfeit it has accrued, and insist on the note being paid as
long as it deems this to its interest, and then, when it learns that the
assured is sick or dead, to rely on the past forfeiture, which, at
the time, it elected to waive, would be to allow it to take inconsistent
positions"—so may it also be said in this case.

The evidence with regard to appellant's course of business
in collecting premiums on policies of the coemployees of the
insured who were similarly situated was clearly com-
petent to show its position with regard to past de-
faults.  So was the evidence with regard to the pay-
ment by the railroad company of the past-due premium of
the insured which was made in the regular course of busi-
ness.  Appellant cannot also question the authority of the
railroad company in this regard because some one else might
have done so.  If appellant would have continued the policy
in question in force in case of no accident, as it did in the
other instances testified to, and the jury by their verdict
must have so found, then the policy must also be held to
be in force for all purposes under the facts and circumstances
of this case in view of the verdict of the jury upon the
questions submitted to them.

In view of what has been said, the exceptions to the charge
of the court require no further comment.  The charge as
given reflects the law as we have attempted to outline it
herein, and hence cannot be successfully assailed.  While, in

view of all the evidence, we might not on all points have arrived at the same conclusion as the jury, yet we think the evidence upon every material element of the case is of that character which authorized them to find in favor of the respondent. The case was well tried in the court below and ably presented to this court. Both sides have filed briefs, in which a large number of the cases both for and against every legal proposition involved in the case were cited. We have taken much time and great care to examine the cases referred to by counsel. We have also carefully examined the entire record and have given the case the attention its importance merited, and the result reached reflects our best judgment.

The judgment therefore should be, and it accordingly is, affirmed, with costs to respondent.

McCARTY and STRAUPP, JJ., concur.

ON APPLICATION FOR REHEARING.

FRICK, C. J.

Appellant's counsel has filed a petition for a rehearing, in which he most vigorously assails some of the conclusions reached by us in the opinion filed in this case. Petitions for rehearings in which the main features of the case are reargued by counsel are of such frequent occurrence that in most instances it is not deemed necessary for us to again state the reasons that constrain us to adhere to the conclusions announced in the original opinion. In some instances, however—and the petition in this case is one—counsel's complaints are of such a nature that neither in justice to counsel nor to ourselves can his contentions be ignored. In the petition in this case some of the grounds discussed by counsel why we should grant a rehearing are stated in the strongest possible terms, and the fact that we have erred is stated therein with a degree of certainty that hardly admits of a possibility of error on his part. One of his most serious complaints arises from the fact that we held that an alleged error

relating to the admission of evidence with respect to a waiver was not sufficiently assigned to authorize us to review the rulings of the trial court upon that subject. Upon this point counsel in his petition says: "With all deference to the court, we feel compelled to say that this decision denying appellant the right to be heard upon the question of pleadings so made in this record, as we have shown, seems to us to be most unjust. If the way to this court from the judgments of the inferior courts is thus to be beset with traps and pitfalls, one can but wonder where the end is." This is strong language, and if it be true that this court is merely setting "traps and pitfalls" in requiring that the errors which are desired to be reviewed must be assigned in such a manner as to apprise both the court and opposing counsel of just what is sought to be reviewed, then the rules with regard to making assignments of error should be changed. We, however, are unable to see wherein any traps or pitfalls have been set by us, nor upon what fact or ruling of this court such a claim can be based. In his original brief counsel had assumed that the alleged error that the trial court had admitted evidence of waiver without having been pleaded was assigned, and hence he discussed that question. When respondent's counsel filed their brief, however, they contended: (1) That appellant could not be heard upon the question because the assignment was not sufficient to authorize us to review the alleged error; and (2) that, although appellant was entitled to be heard, that it, nevertheless, must fail in its claim upon this ground, because this court had in previous decisions held that a plaintiff could prove waiver without expressly pleading it. While in answer to the first contention appellant's counsel did not directly concede that his assignment of error was insufficient, he nevertheless did so indirectly. In referring to this point in his reply brief, he said: "In any event, if the other assignments which go to the merits are not to be sustained, it (this court) may, in its discretion, consider plain error, although unassigned, since there is no statute governing this procedure." Why the procedure contended for by counsel would be intolerable,

we need not now pause to discuss, since the decisions of this court have already, in a measure at least, answered it. (See *Smith Table Co. v. Madsen,* 30 Utah 297, 84 Pac. 885; *Lyon v. Mauss,* 31 Utah 283, 87 Pac. 1014.) In the latter case it is said: "The assignment of error is the groundwork of the case in this court. Without error being assigned there is nothing before this court."

After a careful examination of the assignments of error made by appellant's counsel in this case, we discovered none in which it was claimed that the trial court erred in admitting evidence of a waiver. Counsel does not even now point out such an assignment. All he insists upon is that the point was raised by the general assignments of error relating to the admission of evidence. We, however, are not able to agree with counsel that the general assignments of error are sufficient to present the question for review, and, when we cannot agree with counsel after having given the matters of difference between us and them our best judgment, we, and not counsel, must assume the consequences. Moreover, this court, in *West v. Insurance Soc.,* 10 Utah 451, 37 Pac. 687, held that: "Where a pleading contains an allegation of the performance of a condition, it is not absolutely necessary to allege a waiver, because proof thereof is admissible under the general allegation." The foregoing case is followed in *Stephens v. Union, etc., Soc.,* 16 Utah 22, 50 Pac. 626, 67 Am. St. Rep. 595. There are also numerous authorities which support the rule laid down in the foregoing cases. The trial court, in all probability, relied on the foregoing cases in making the rulings.

But, assuming that since the statute relating to the filing of a reply has been amended somewhat since the former decisions of this court, and for that reason the question as to whether a reply should have been filed in this case in which the waiver was pleaded is still an open one, and assuming further that we should have reviewed the question upon the general assignments, yet the record is such that this question must have been decided adversely to counsel's contentions for the following reasons: There is no claim made by appellant

that it was prevented from meeting the evidence of waiver at the trial to the same extent as though the waiver had been in fact pleaded, and a careful examination of the record discloses the fact that appellant was not affected in any substantial right by reason of the admission of the evidence of waiver without having been pleaded. Under such circumstances, the error, if one was committed in admitting the evidence, was technical rather than substantial, and thus was an error for which, under our statute, we could not reverse the judgment. Had there been a proper assignment of error, we should have reviewed the question in the original opinion, for the same reason that we have discussed the matter now, namely, for the sole purpose of showing that counsel has no legal cause for complaint.

The remaining portion of the petition is devoted to a reargument of the questions passed on in the opinion, and, of the many things complained of by counsel, we shall refer to a few only. In referring to the question of waiver, counsel insists that this court gave "effect to a presumption created by itself." But the fact is that what we held was, not that there was a presumption of waiver of either law or fact, but that the jury were authorized to infer certain facts from certain conduct, or to make certain deductions from other facts upon the question of waiver. We assumed there was a difference between a presumption of fact and an inference to be deduced from other facts.

With respect to the acts of the insured, counsel makes the following statements: "His acts or omissions are not considered, although we presume that he could waive or forfeit his contract. Perhaps this may not be true in actual practice, owing to the prevailing prejudice in favor of making insurance companies pay something for nothing; but theoretically under the law he is bound by his contract the same as the insurance company." Such statements, so far as we are concerned, must remain unanswered, not only because they transcend the legitimate bounds of forensic argument

38  Utah—36

applicable to legal proceedings, but also because they do not reflect the sober judgment of counsel. They may perhaps give temporary relief to the mental state which arises from the sting of defeat, but beyond that they serve no purpose whatever. In considering the question of waiver, we refused to declare as a matter of law that either the appellant or the insured had waived the right to insist upon the precise terms of the policy, but held that under the facts and circumstances the question of waiver was one of fact for the jury, and that there was sufficient evidence to justify their finding. This certainly is very far from indulging a presumption in favor of either party with respect to waiver or with regard to any other fact necessary to a waiver.

Counsel also complains that there were a number of things in the record we did not discuss. This no doubt is true. After we had disposed of the controlling questions, it was deemed unnecessary to discuss or pass upon the subordinate propositions in the case which in no event could affect the result. Counsel in presenting the assignments in his original brief grouped them as indicated in the opinion. Why should we specially consider what counsel did not see fit to discuss, except as this was done in connection with some kindred subject. Every proposition, either affirmative or negative, which, in our judgment, could have changed the result received due attention, and in view that the judgment was affirmed we did not deem it necessary, nor do we deem it necessary now, to discuss questions which cannot change the final result.

Finally, counsel seriously contends that it is apparent that we have either misunderstood or misapplied the law as laid down in the quotations set forth by us in the opinion upon the question of waiver. We did not contend, nor do we now contend, that the facts of this case covered all of the conditions mentioned in the quotations set forth in the opinion. Our conclusions were, however, in the main based upon that portion of the quotations wherein it is stated that: "As a general rule, if the company has treated the policy as valid, and has sought to enforce payment of the premium, or has

otherwise with knowledge recognized, by its own acts or declarations, or those of its agents, the policy as still subsisting, it waives thereby the prior forfeitures." We cited a number of cases in which the foregoing doctrine was applied to a state of facts less favorable to the insured than were the facts in this case, and where it was held that the company was liable, although the insured had died before the premium which was in default had been paid. The doctrine announced and supported by those cases seemed to us fair and just if supported by the facts. We thought, and still think, that in this case the doctrine announced in those cases is applicable, and that it is supported by the facts. True, as we said, this case, upon the question just discussed, is perhaps a border-line case; but in our judgment it is not one where we should interfere with the findings of the jury. We believe, and still believe, this conclusion to be sound.

The petition for a rehearing is denied.

McCARTY and STRAUP, JJ., concur.