(September 25, 1915.)

## ROSE McKUNE, Respondent, v. CONTINENTAL CASUALTY CO., a Corporation, Appellant.

[154 Pac. 990.]

Accidental Insurance—Agreed Statement of Facts—Findings by the Court—Law Applicable to Stipulated Facts.

1. Where a case is submitted to the trial court upon an agreed stipulation of facts and the trial court makes findings, a part of which are not fully supported by the stipulated facts, the case will not be reversed and sent back for further findings where the law applicable to the agreed statement of facts warrants and supports the judgment.

[As to waiver of right to have findings of fact made by court, see note in Ann. Cas. 1914D, 797.]

2. Under an agreed statement of facts, no findings by the court are absolutely necessary, the question then being what is the law applicable to such facts. Where the court makes findings of its own in such a case, an objection that they are not justified by the evidence cannot be sustained if the law applicable to the agreed statement of facts supports the judgment, since the judgment must be tested by the agreed statement of facts and not by the finding of facts made by the court.

APPEAL from the District Court of the Fourth Judicial District for Lincoln County. Hon. Edward A. Walters, Judge.

Action to recover the amount represented by an accident policy because of the death of the insured. Judgment for the plaintiff. *Affirmed.*

Budge & Barnard, for Appellant.

The case having been submitted upon an agreed statement of facts, it was unnecessary for the court to make findings. (*Gregory v. Gregory,* 102 Cal. 50, 36 Pac. 364; *McMenomy v. White,* 115 Cal. 339, 47 Pac. 109.)

There being no proof to support the findings made, the judgment should be reversed. (*Idaho Placer Min. Co. v. Green,* 14 Ida. 294, 94 Pac. 161.)

Considering the stipulated facts as the only proper findings of fact upon which the judgment should have been based, a judgment based upon other findings which ignore the agreed facts must of necessity be erroneous. (*Seward v. Rheiner,* 2 Kan. App. 95, 43 Pac. 423.)

The insured was not killed until Feb. 24, 1913. The policy certainly was not in force after the expiration of the month of January, and there is no possible theory on which it could have been considered to be continued subsequent to that time. The insured received his wages for the month of January and kept them and necessarily knew (although this is not a material factor) that the premium had not been deducted. The insurance company did not know that the policy had lapsed by reason of failure to pay the second instalment until

February 20th, and it at once notified the insured, who was killed before the notice was received. The action of the company in billing the second instalment for deduction from wages from the month of February cannot be distorted into a waiver, because the policy gave it the option to collect defaulted instalments from wages for any subsequent month. (*Sewell v. Continental Casualty Co.*, 92 Miss. 857, 46 So. 714; *Hagins v. Aetna Life Ins. Co.*, 72 S. C. 216, 51 S. E. 683; *Bane v. Travelers' Ins. Co.*, 85 Ky. 677, 4 S. W. 787; *Employers' Liability Assur. Corp. v. Rochelle*, 13 Tex. Civ. App. 232, 35 S. W. 869; *Brown v. Pacific Mutual Life Ins. Co.*, 109 Mo. App. 137, 82 S. W. 1122; *Reed v. Travelers' Ins. Co.*, 117 Ga. 116, 43 S. E. 433; *McMahon v. Travelers' Ins. Co.*, 77 Iowa, 229, 42 N. W. 179; *York v. Railway Officials & Employers' Accident Assn.*, 51 W. Va. 38, 41 S. E. 227; *Continental Casualty Co. v. Jasper*, 121 Ky. 77, 88 S. W. 1078; *Pride v. Continental Casualty Co.*, 69 Wash. 428, 125 Pac. 787; *Lacy v. Continental Casualty Co.*, 170 Ill. App. 527; *Aetna Life Ins. Co. v. Ricks*, 79 Ark. 38, 94 S. W. 923; *Crosby v. Vermont Accident Ins. Co.*, 84 Vt. 510, 80 Atl. 817; *Parker v. Knights Templar & Masons' Life Indemnity Co.*, 70 Neb. 268, 97 N. W. 281; *Bryan v. National Life Assn.*, 21 R. I. 149, 42 Atl. 513; *Plumer v. Continental Casualty Co.*, 12 Ga. App. 594, 77 S. E. 917.)

Johnson & Haddock, for Respondent.

"The objection to certain findings, upon the ground that they were not justified by the evidence, cannot be sustained, As the case was submitted upon an agreed statement of facts no findings were necessary, and the only question being as to what was the law applicable to those facts." (*McMenomy v. White*, 115 Cal. 339, 47 Pac. 109.)

"The insurance company should not be allowed to occupy such a legal attitude that it can say in case the assured lives 'You owe this order,' but in case of his death, that 'the insurance has expired by reason of its nonpayment.'" (*Bane v. Travelers' Ins. Co.*, 85 Ky. 677, 4 S. W. 787.)

Insurance policies, if fairly open to construction, must be so construed as not to work a forfeiture. (*McMaster v. New*

*York Life Ins. Co.,* 183 U. S. 25, 22 Sup. Ct. 10, 46 L. ed. 64; *Stinchcombe v. New York Life Ins. Co.,* 46 Or. 316, 80 Pac. 213.)

"A demand of a premium or assessment on account of which a forfeiture might be claimed or an attempt to collect it is a waiver of the forfeiture, for it is a recognition of the continuance of the contract." (25 Cyc. 871.)

"Where an accident policy is kept in force so as to authorize insurer to demand and receive a past-due instalment of the premium, the policy must be deemed in force for all other purposes so as to bind insurer thereon." (*Loftis v. Pacific Mut. Life Ins. Co.,* 38 Utah, 532, 114 Pac. 134; *Continental Casualty Co. v. Jennings,* 45 Tex. Civ. 14, 99 S. W. 423; *Washburn v. Union Central Life Ins. Co.,* 143 Ala. 485, 38 So. 1011; *Galliher v. State Mutual Life Ins. Co.,* 150 Ala. 543, 124 Am. St. 83, 43 So. 833; 3 Cooley's Brief on Insurance, 2724; *Union Central Life Ins. Co. v. Duvall,* 20 Ky. Law Rep. 441, 46 S. W. 518; *Walls v. Home Ins. Co.,* 114 Ky. 611, 102 Am. St. 298, 71 S. W. 650; *Moreland v. Union Central Life Ins. Co.,* 104 Ky. 129, 46 S. W. 516; *National Life Ins. Co. v. Reppond* (Tex. Civ.), 81 S. W. 1012; *Shawnee Mutual Fire Ins. Co. v. Cannedy,* 36 Okl. 733, 129 Pac. 865, 44 L. R. A., N. S., 376; *Williams v. Empire Mut. etc. Ins. Co.,* 8 Ga. App. 303, 68 S. E. 1082; *Union Central Life Ins. Co. v. Spinks,* 119 Ky. 261, 83 S. W. 615, 84 S. W. 1160, 7 Ann. Cas. 913, 69 L. R. A. 264; *New England etc. Ins. Co. v. Springgate,* 129 Ky. 627, 112 S. W. 681, 113 S. W. 824, 19 L. R. A., N. S., 227.)

SULLIVAN, C. J.—This is an action to recover on an accident policy issued by the appellant to one Frank J. McKune, the beneficiary named in the policy being his mother, Rose McKune, the plaintiff in this action.

The case was submitted to the lower court upon an agreed statement of facts, and thereupon the court made its finding of facts, conclusions of law and entered judgment in favor of the plaintiff for $1,000, that being the amount named in the policy of insurance. The appeal is from the judgment.

The assignments of error specify the insufficiency of the evidence to justify the findings and judgment as well as certain alleged errors of law.

The following facts, among others, appear from the agreed statement of facts:

On November 8, 1912, Frank J. McKune made a written application to the defendant company for a policy of accident insurance, which policy is attached to and made a part of said stipulated facts. At the time McKune made said application he signed a pay order drawn on the Oregon Short Line Railway Company and delivered the same to the defendant insurance company, a copy of which order is attached to and made a part of the stipulation. Said application and order were received by the defendant company at its branch office in San Francisco, California, on November 19, 1912, and the company thereupon issued and delivered to said McKune the policy sued on herein.

On November 8, 1912, the said McKune was in the employ of the Oregon Short Line Railway Company as an "extra" freight brakeman, and continued in such employment until his death on February 24, 1913. As such employee he performed intermittent and irregular service as required by said railroad company, and his compensation therefor was based upon mileage made and "overtime." The earnings of said McKune were as follows:

During November, 1912....................$65.12
December, 1912.................... 82.02
January, 1913..................... 51.47
February, 1913.................... 87.99

It was the custom of said railroad company to pay its employees on or shortly after the 15th of each month the wages earned during the previous month, after deducting therefrom the amount of any "pay order" drawn against such wages by the employee. The defendant company, pursuant to its regular custom and immediately upon the receipt of said pay order, sent the same to the O. S. L. Railway Company, and on or about December 20, 1912, billed the McKune account to the railroad company for collection of the first

instalment of premium on his said policy from his wages for the month of December, 1912. Said billing was on the form used by the defendant company commonly called a "paymaster's return list," and consisted of several sheets. Said bill was made up in the office of the defendant company and contained the names of the employees of the railroad company who had given pay orders to the defendant company authorizing deductions or premiums from their wages for the month of December, 1912. Copies of said sheets are attached to said stipulated facts and made a part thereof.

The first instalment or premium in the sum of $15 was deducted by the paymaster of the railroad company pursuant to said pay order of McKune. Said exhibit together with a remittance of $15 to cover the deduction made from McKune's wages for December was forwarded by the railroad company to the San Francisco office of the defendant and received there on January 20, 1913. Thereafter the defendant company included the name of McKune on the paymaster's return list for the month of January, 1913. Said list was made up at the San Francisco office of the defendant and sent to the railroad company two or three days later. A copy of the particular sheet of the January billing on which the name of McKune appeared is attached to and made a part of the stipulation of facts. A penciled memorandum appears on said sheet opposite the name of McKune, as follows: "Not enough time in." On November 20, 1912, McKune executed in favor of one Land a pay order in the sum of $50 at Glenns Ferry for a watch purchased from Land, and the pay order provided for the deduction of $20 from the November, 1912, wages of McKune, $20 from the December, 1912, wages, and $10 from the January, 1913, wages. Said order was executed in duplicate and one copy thereof transmitted to Stevenson, superintendent of the Idaho division of said railroad company, and by him transmitted to the paymaster of the O. S. L. Railroad Company at Salt Lake. McKune resided at the railroad company's hotel and gave further additional pay orders, payable out of his January, 1913, wages, for the sum of $50, and he was also liable for a hospital fee in the sum

of fifty cents.   The railroad company made disposition of
McKune's January wages on or about the 15th of February
by disbursing the same as follows:

| | |
|---|---|
| 1 hotel pay order | $30.00 |
| 1 watch pay order | 10.00 |
| 1 hospital fee | .50 |
| Balance paid McKune | 10.97 |
| Total earned | $51.47 |

In making payment of the said sum of $10.97, to McKune,
the usual form of check of the railroad company was em-
ployed and contained no statement or information as to the
amount earned by said McKune nor as to what pay orders
had been honored.   The defendant had no knowledge that
the second instalment of premium had not been deducted
from the January wages of McKune until the receipt of ex-
hibit "E" on February 20, 1913.   There had been stamped
the word "lapsed" on said exhibit "E" opposite the name
of the insured and his account was marked as "lapsed" on
the records of the defendant company.   On the same date,
to wit, February 20, the defendant mailed to McKune at Sho-
shone, Idaho, a certain notice, a copy of which is attached
to the stipulation of facts and made a part thereof.   Said
"lapse" notice was not received by the insured during his
lifetime, but was received by the plaintiff, Rose McKune,
after her son's death.

McKune died on the 24th of February from injuries re-
ceived on that day by reason of being caught between cars
and crushed while making a coupling.   His death was caused
solely by injuries effected through accidental means and was
occasioned in a manner covered by the terms of the policy.
Rose McKune, as required by the terms of said policy, gave
notice and filed proof of the death of McKune.   The death
notice was received by the defendant company at its San
Francisco office March 3, 1913, and this was the first notice
or knowledge the defendant company had of the injury and
death of McKune.   Deceased's name was included by the
defendant company on its paymaster's return list for the

month of February, 1913, and this list was made up in the San Francisco office of the defendant on or about the 20th of February, 1913. The sum of $30 was deducted by the railroad company from the wages of said McKune earned by him in the month of February, 1913, and forwarded by the railroad company, together with the paymaster's return list or sheet, to the San Francisco office of the defendant company and was received there on or about March 20, 1913. The defendant company had no knowledge as to whether or not any deduction had been made by the railroad company from the February wages of McKune until the receipt of said remittance together with exhibit "H."

Said $30 upon its receipt at the San Francisco office of the defendant was placed in the "Suspense Account" and the claim was then taken up with the main office of the defendant at Chicago, Illinois, and on April 29, 1913, the defendant's check for $30 was mailed from the San Francisco office of the defendant to the plaintiff and was received by her. She declined to accept the $30 and returned the same to the defendant company. The defendant company is ready and willing to return said $30 to whomsoever may be entitled to it. In all of its actions, in connection with the policy of said McKune, the defendant company has pursued the same course it has always pursued under similar circumstances in connection with similar policies held with it by other employees of the Oregon Short Line Railway Company.

It is also stipulated that sometimes wages earned by "extra" freight brakemen, such as McKune, whose duties were similar to those of McKune, earned in the last day or two of a month, would be included in the wages of the employee the next succeeding month. It is further stipulated that in this particular case no wages earned by McKune in January were carried over to February, and no wages earned in December were carried over to January.

At the end of each run the conductor in charge of the train on which McKune was working would make up a slip showing the amount earned on the run, and this slip was in every instance signed by McKune and forwarded by the conductor

to the proper official of the railroad company. It was the custom of the company to honor watch and board orders and hospital fees in preference to insurance fees, where the sum earned was insufficient to pay all off.

From the foregoing facts the trial court made its finding of facts, conclusions of law and entered judgment in favor of the plaintiff for $1,000.

The main contention of the appellant is that the finding of facts is not sustained by the evidence, and for that reason the judgment is not based upon the agreed facts but upon the facts as found by the court, and counsel proceed in their printed brief to criticise the findings made by the court and contend that certain of such findings are not supported by the evidence.

It must be conceded that some of the findings made by the court were not necessary under the facts of the case, and it was not necessary for the court to make any findings of its own, as it might have adopted the facts as stipulated as the finding of the court. The reason why finding of facts is not necessary in cases of this kind is because the stipulation of facts takes the place of the court's findings, and if on the stipulated facts the court has made findings that were not necessary and not supported by the evidence, that will not be permitted to vitiate the judgment. The judgment must be tested by the agreed statement of facts and not by findings of fact made by the court in such a case. The stipulated facts are before this court, and if the law applicable to such facts warranted the judgment entered by the trial court, this court ought not, and will not, reverse that judgment simply because the court has found some things as facts that were not stipulated.

It was said in *McMenomy v. White*, 115 Cal. 339, 47 Pac. 109, as follows: "The objections to certain findings upon the ground that they were not justified by the evidence cannot be sustained. As the case was submitted upon an agreed statement of the facts, no findings were necessary, the only question being as to what was the law applicable to those facts."

In the case before us the question is: What is the law ap-

plicable to the stipulated facts, regardless of the finding of facts made by the court? We are satisfied that the stipulated facts support the judgment.

It is therefore not necessary to send the case back to the trial court to change in any manner its finding of facts. As bearing upon some of the questions involved in this case, see *Continental Casualty Co. v. Jennings,* 45 Tex. Civ. 14, 99 S. W. 423; *Loftis v. Pacific Mutual Life Ins. Co.,* 38 Utah, 532, 114 Pac. 134.

Finding no reversible error in the record, the judgment must be affirmed, and it is so ordered, with costs in favor of the respondent.

Morgan, J., concurs.

Budge, J., took no part in the decision of this case.

ON REHEARING.

(February 16, 1916.)

WAIVER OF PAYMENT OF PREMIUM ON INSURANCE POLICY—FORFEITURE—
    PLEADING OF WAIVER—WAIVER RAISED IN REBUTTAL.

1.  Where an insurance company issues a policy upon which the premium is payable in four instalments, the payment of the first, second, third and fourth instalment to continue the policy in force for respective periods of two, two, three and five months, all such periods to be computed successively from the date of the policy, which was November 8, 1912, and credit is given the insured for the first payment at the time of the issuance of the policy, and an instalment of the premium was received by the insurance company only on January 20, 1913, and upon February 20, 1913, notice was given by the company that the second instalment should be paid, and on February 24th the insured was killed, which fact was known to the company on March 3d, and the company never recalled the demand made for payment of the second instalment and received payment out of wages due the insured on March 20th and retained said money until April 29th. *Held,* that the payment made on January 20th continued the policy in force for two months from its date, and that the conduct of the company amounted to a waiver of the conditions of the policy wherein forfeiture is declared as a penalty for nonpayment of instalments of premium.

2.   An insurance company may waive forfeiture for noncompliance with the provisions of a policy by its own conduct, and as a forfeiture is not favored, waiver will be inferred whenever it is a reasonable inference from the facts.   The provisions of the policy alone do not of themselves work a forfeiture.

3.   Ordinarily, evidence of a waiver is not admissible, unless waiver is pleaded; but this is true only where the party relying upon the waiver had an opportunity to raise it by proper pleading. It is not true if waiver is properly relied upon by plaintiff as rebuttal matter to meet a defense raised by defendant. *Held,* that in this case the point of waiver is raised in rebuttal to meet the defense of forfeiture attempted to be raised by defendant.

McCARTHY, District Judge.—A rehearing was granted in this cause and the principal point urged in the argument on the rehearing is that the insurance policy issued by appellant to respondent had lapsed before the death of the insured for failure to pay an instalment of the premium.

It appears from the stipulation of facts that the policy was issued as of November 8, 1912, upon an application of the same date.   In the application the insured agreed to pay a yearly premium of $60 in four instalments of $15 each.   The following language is used in the application:

"I agree to pay therefor $60.00 in 4 instalments of $15.00 each.   If paymaster's order is given to provide for the payment of these instalments, I agree to pay them as therein provided, and do hereby make such order a part of my contract with the Company. . . . . I further agree that if any payment be not made by 12 o'clock noon, standard time, of the day when due, as above specified, all my rights under said policy and the rights of the beneficiary thereunder shall then and thereby become void, and that my policy can be reinstated only at the option of the Company as provided in the policy and that no claim for loss arising between the time of such forfeiture and reinstatement shall be good against the Company."

The insured also signed a pay order authorizing his employer, the Oregon Short Line Railroad Company, to deduct his premium in four instalments of $15 each from his wages

for the months of December, 1912, and January, February and March, 1913. The pay order contains the following language: " . . . . and further, at the option of the Continental Casualty Company, to pay any instalment, payment of which has been in default from any reason whatever, from my wages for any month thereafter succeeding.

"I understand and agree as to the duration of my insurance; . . . . (2) that if premium is payable in four instalments the payment of the first, second, third and fourth instalments shall continue my policy in force for respective periods of two, two, three and five months, . . . . all such periods to be computed successively from the date of the policy; (3) that the failure to pay any instalment of premium, from whatsoever cause it may arise, shall terminate my said policy at the expiration of the specified period without any notice; (4) that the paymaster is my agent and his action entirely at my risk; (5) that should default be made in the payment of any instalment and the defaulted instalment afterward be paid, then such payment shall reinstate my policy only from the date of acceptance of the overdue premium as provided in the policy."

The insurance policy contains the following provisions:

"The Company shall not be liable for any loss occurring while the Assured shall be in default in the payment of any premium. If this policy shall lapse at any time by reason of the failure of the Assured to pay premium as agreed the subsequent acceptance of the overdue premium by the Company . . . . shall reinstate the policy as to accidental insurance to cover disability or death resulting from accidental injury *thereafter sustained.*"

The pay order gave the insurance company option to collect any instalment, payment of which had been defaulted for any reason whatever, from wages for any month thereafter succeeding, and further provided: "should default be made in the payment of any instalment and the defaulted instalment afterward be paid then such payment shall rein-

state my policy only from the date of acceptance of the overdue premium as provided in the policy.''

The insurance company sent the railroad company a notice authorizing the deduction of the first instalment from the insured's wages for December, 1912. The December wages were payable about the middle of January and the instalment was received by the insurance company on January 20, 1913. The instalment from the January wages was not paid. About February 20th the insurance company learned that the deduction from the January wages had not been made, and sent the insured a notice, marked exhibit ''G,'' reading as follows:

''This is to inform you that we have been unable to collect the 2nd instalment on order No. 2206520 given by you on paymaster of the Oregon Short Line Railroad Co. . . . . to pay the premium on your insurance. This instalment of $15.00 should be sent to this company immediately. Otherwise you will be without insurance until the overdue premium is received in the usual way from your paymaster. No man can afford to be without insurance. 'It is better to be safe than to be sorry.' ''

The insurance company in making up the February paymaster's list, included the name of the insured in order that the instalment from the January wages might be collected, and sent this list to the railroad company about February 20th. On February 24th, the insured was killed and the insurance company learned of this fact on March 3d. It never recalled the demand made on the railroad company for payment, and received payment from the railroad company out of wages due the insured on March 20th. It kept this money until April 29th, and then tendered it back and attempted to declare a forfeiture of the policy.

The contention of the appellant is that the insurance policy was forfeited at the time of the insured's death by reason of nonpayment of an instalment from the January wages.

It occurs to us that the first question is: How long did the payment from the December wages, received on January 20, 1912, continue the policy in force?

The pay order says that if the premium is payable in four instalments the payment of the first, second, third and fourth instalments shall continue the policy in force for respective periods of two, two, three and five months, all such periods to be computed successively from the date of the policy. This apparently contemplates that there shall be a first payment at the time the policy is issued which shall continue the policy in force for two months from that time, and that there shall then be a second payment which shall continue the policy in force for two months more. In this case it is apparent that the first payment was waived. The company gave McKune credit for the first payment, and if he had died during the first two months, the policy would have been in force upon payment of the premium after his death. The first payment which he made took the place of the second payment, in the ordinary case. In the ordinary case, the second payment would continue the policy in force for two months from its date.

It may thus be reasonably contended in this case, in accordance with the language of the pay order, that the payment made on January 20th continued the policy in force for two months from its date. The use of the language to the effect that all periods are to be computed successively from the date of the policy furnishes some ground for an argument to the contrary, but this argument is met by the fact above pointed out that the first payment was waived and the payment made on January 20th is to be considered as similar to the second payment in the ordinary case.

If the construction of an insurance policy, as applied to the facts of the case, is a matter of doubt, then we are inclined to think that a construction is to be favored which prevents a forfeiture rather than one which favors a forfeiture. This is a reason for favoring the construction above outlined. There may be other provisions in the pay order and policy which favor a different construction, but in such cases, we hold that those provisions should be given effect which prevent a forfeiture, rather than those which favor one.

Since the payment on January 20th continued the policy in force for two months, or until March 20th, and the insured was killed on February 24th, it is evident that he was not in default at the time of his death.

The construction of the contract which we have adopted disposes of the case, but we think it well to advert to the question of waiver which was also mentioned in the argument.

The respondent contends that even if the insured was in default at the time of his death, the insurance company waived its right to insist upon a forfeiture of the policy by its conduct in first demanding payment of the past-due premium; second, failing to recall that demand, even after learning of the insured's death; and third, keeping the money for over thirty days after receiving it. It is, of course, the settled law that an insurance company may waive a forfeiture and that, a forfeiture being not favored, a waiver will be inferred whenever it is a reasonable inference from the facts. The mere provisions of the policy do not of themselves work a forfeiture. The question is whether the company so conducted itself that it is able to insist upon the forfeiture provisions of the policy.

Before referring to the merits of this question of waiver, a question of pleading must be disposed of. The appellant contends that since the plaintiff does not plead a waiver in his complaint, the question of waiver cannot be considered. Ordinarily evidence of a waiver is not admissible unless waiver is pleaded. This, of course, is true only where the party relying upon the waiver had an opportunity to raise it by proper pleadings. It is not true if waiver is properly relied upon by a plaintiff as rebuttal matter to meet a defense raised by the defendant, because in this state no pleading by way of replication is necessary. In this case the point of waiver is raised in rebuttal to meet the defense of forfeiture, attempted to be raised by the defendant. The facts upon which the waiver is based are all contained in the stipulation without any objection on the ground of insufficiency of the pleading. Under these facts, we think that it

would be the height of technicality to refuse to consider the question of waiver.

Returning to a consideration of the question of waiver on the merits, we call attention to the case of *Loftis v. Pacific Mutual Life Ins. Co.,* 38 Utah, 532, 114 Pac. 134, in which the supreme court of Utah held that the right to insist upon a forfeiture was waived in a case very similar to the present one, so far as the provisions of the policy and the conduct of the insurance company are concerned. Even if it should be held that the insured was in default at the time of his death, and that the company therefore had a right to insist upon a forfeiture, we think that that right was waived by the company in this case by its conduct. as above outlined. The notice sent to him is to be reasonably construed as a demand for payment rather than a notice of forfeiture. The failure to recall the demand upon the railroad company after learning of the insured's death is more consistent with an intention to waive the forfeiture than with an intention to insist upon it. Keeping the money for a length of time, which this court considers to be unreasonable under the circumstances, before returning it, is also inconsistent with an intention to declare a forfeiture.

We have reached the conclusion that the questions involved in the petition for rehearing and presented to the court upon the reargument were correctly decided in the original opinion in this case, which is accordingly adhered to.

Sullivan, C. J., and Morgan, J., concur.