NELLIE HIGHLAND, Appellee, v. IOWA LIFE INSURANCE COMPANY, Appellant.

INSURANCE: Life Insurance—Note as Part Payment of Premium.
1  The mere giving of a note for a premium due on life insurance will not work the payment of the premium, but the insurer may so treat it as being the equivalent of cash, and so deal with the insured as to waive the right to deny that the note at maturity worked an actual payment, although not paid.

APPEAL AND ERROR: Review—Law Actions—Trial to Court—
2  Finding Has Effect of Verdict. In a case tried to the court without a jury, its findings have the effect of a verdict.

INSURANCE: Life Insurance—Evidence—Sufficiency. Evidence reviewed,
3  and held sufficient to sustain the finding of the court that an insurance company which had accepted a note for part of the third premium on life insurance, and retained the note and demanded payment after it became due, waived its right to claim a forfeiture of the policy.

**INSURANCE:** Life Insurance—Right to Insurance Under Loan Value
4 —Failure to Present Policy for Endorsement. Where an insurance
policy provided that, after the payment of three premiums, the
policy would, upon presentation for endorsement, be extended
for such length of time as the loan value would buy extended in-
surance, the failure of the insured to present the same for such
endorsement did not prevent the extension of the policy, where
such payments had been made, and the policy was extended, and
continued effective without such endorsement.

*Appeal from Wright District Court.*—H. E. Fry, Judge.

APRIL 10, 1919.

Suit on a policy of life insurance. Trial to court with-
out a jury. Judgment for plaintiff. Defendant appeals.—
*Affirmed.*

*Pickett, Swisher & Farwell,* for appellant.

*Eugene Schaffter* and *Sylvester Flynn,* for appellee.

Salinger, J.—I. A careful analysis discloses that, as
to some quite material matters, the parties are not in dis-
pute. To obtain the advantages given the assured by Clause
X of the policy, one thing necessary for plaintiff to prove is
that three annual premiums had been duly paid. It is agreed
that two were so paid. The first dispute is whether the third
one was. Within the days of grace allowed, the insured paid
$20 to apply on the third premium, and delivered a premium
note for so much as the premium exceeded $20. This note
has never been paid. We agree with appel-

1. INSURANCE: life lant that the mere giving of a note for a
insurance: note
as part pay- premium due will not work a payment of
ment of pre-
mium. the premium. But though the mere taking
of a note which is not paid at maturity will
not give the assured the benefit of said Paragraph X, the
insurer payee of the note may so treat it as being the equiva-
lent of cash, and may so deal with the insured, as to waive
the right to deny that the note, though not paid at maturity,

worked an actual payment. The trial court held it to be the controlling question whether such a waiver

**2. APPEAL AND ERROR: review: law actions: trial to court: finding has effect of verdict.**

had been effectuated. And we think that is so. The case was tried to the court without a jury, and its findings have the effect of a verdict. So the question is whether the evidence is sufficient to sustain a verdict based upon such a waiver. The trial judge wrote an able and exhaustive opinion, which is found in the abstract. Therein he sets out the evidence upon which he bases his conclu-

**3. INSURANCE: life insurance: evidence: sufficiency.**

sions. He finds a waiver by finding as a fact what is undisputed: to wit, that the defendant has always retained this note, even though it made some entries on its books indicating that it considered this note no longer a live asset, and that the policy had lapsed. It finds further that defendant made attempts to collect the note after it made said entries on its books. That fact, too, seems to be shown without conflict. One demand is by a letter from defendant. There is a sharp conflict on what the alleged agent of the defendant said and did, by way of expressly waiving default in payment of the note and giving an indefinite extension of the time wherein to pay. True, the authority of the agent to do this is challenged, both in testimony and argument; and, as said, there is sharp conflict on what the alleged agent said and did. But the authority of the agent, and whether and how he exercised it, are all questions of fact, on which the court found verdict against the defendant. The record discloses many other circumstances, some of which are dwelt on in the opinion of the trial judge. It would serve no useful purpose to extend this opinion by dealing specifically with every item of the proof. We have read the record with due care, and cannot say that the fact findings lack all substantial support. We think that the conclusions of law upon these findings of fact are well sustained. There is first the rule we laid down

in *Trotter v. Grand Lodge*, 132 Iowa 513, at 526:

"It is the universally recognized doctrine that forfeitures are not favored in law, and that the courts will be vigilant and quick to discover and give effect to any act or circumstance from which it may fairly be argued that the insurer has waived the right to strict and literal performance by the insured, or upon which an estoppel against such defense may be founded."

The text of 25 Cyc. 871 declares:

"Indeed, a demand of a premium or assessment on account of which a forfeiture might be claimed, or an attempt to collect it, is a waiver of the forfeiture, for it is a recognition of the continuance of the contract."

In *Limerick v. Home Ins. Co.*, 150 Ky. 827 (150 S. W. 978), it was held that:

"The unconditional demand by an insurance company of payment of an overdue premium note is a waiver of the default, so that the insured may recover on the policy if he immediately complies with the demand by mailing a check for the amount, although the insured property is burning when the demand is received, and the policy provides that the company will not be liable for any loss which might occur while any premium note remains due and unpaid." (See syllabus in 44 L. R. A. [N. S.] 371.)

To the same effect is *New England Mut. L. Ins. Co. v. Springgate*, 129 Ky. 627 (112 S. W. 681).

We have frequently held that, where one is estopped to assert a defense, the situation is precisely as though he never had such defense. Since we hold that the finding of a waiver is sufficiently sustained by the evidence when such finding is treated as a verdict, it follows that what the parties did puts them in precisely the position they would be in if the third premium had been paid in cash. The remaining

question is what, if any, rights the plain-

**4. INSURANCE: life insurance: right to insurance under loan value: failure to present policy for endorsement.** tiff may build upon this premise. As we have said, with the third premium paid, certain rights accrue to the assured under Paragraph X of the policy. Therein, one right given the assured is an option to have the policy continued in force without further payment of premiums, for such a length of time as the loan value of the policy will buy insurance for at the stipulated rate. The loan value of the policy in question was enough to pay for extended insurance for a period up to and including the time at which assured died. It follows that the policy is effective though no premiums were paid beyond the third one.

An argument in avoidance is made. It is not very insistent. It was nowhere made in either the errors relied on for reversal or the brief points. The nearest specific reference in the errors relied on is that the court erred in holding that the unpaid note constituted a full payment of such premium, entitling the insured to paid-up or extended insurance. No reference whatever to extended insurance is found in the brief points. The exact avoidance argument is, in effect, that that clause of the policy which gives option to have extended insurance has a requirement that the policy shall be presented for endorsement. Neither the errors relied upon for reversal nor the brief points can be strained into making a reference to such a position. About the most that can be said is that such argument is made in pleading. A statement in petition that rights are claimed under said Paragraph X is met by an allegation that all the rights of assured or plaintiff by virtue of this paragraph were lapsed and forfeited by reason of nonpayment of said note. It will be noticed that failure to have the policy endorsed is not mentioned. There is nothing in the provisions of the note pleaded to work that the policy is to lapse though extended insurance is paid for, if assured failed to have the policy en-

dorsed.   There is a denial in pleading that plaintiff is enti-
tled to the credit referred to in petition by reason of Clause
X.   This denial, however, is limited to denying that defend-
ant recognized and treated the policy as being entitled to
the credit set forth in said paragraph.   That pleading rests,
not upon failure to have the policy endorsed, but upon the
claim that the third premium was not, in fact, paid.   And
there was a specific allegation in the reply of plaintiff that
the insured made no choice of the options provided for in
Clause X; had borrowed no money from the company; what
the loan value of the policy was; and that, by the terms
thereof, said loan value became and was a credit on said
policy, and automatically continued the same in full force
until May 22, 1915, without the payment of any further sum.
On the argument now advanced, this allegation in the reply
was demurrable.   But that pleading was in no manner as-
sailed.

It is true the clause provides that the policy will be
continued in force "on presentation thereof to the company
for endorsement." It may be conceded that if, after the note
had matured and remained unpaid, the company had de-
manded of assured that he present his policy for endorse-
ment in order that he might obtain the benefits of the pro-
vision, there might be some question as to what the conse-
quences would be if, after such notification or demand, the
policy was not presented for endorsement.   But, in view
of the hostility of the law to forfeitures, it would be a
hard rule, even on the law side, to hold that one who had in
fact paid premium for a stated time in advance, forfeited
his insurance for nonpayment during a period for which
payment had been made, merely because he did not, on his
own motion, present his policy for endorsement.   Failing to
have it endorsed was, of course, no advantage to the assured.
Such failure gave him no additional rights.   One who had
let his note remain with the defendant after it had matured,

and without making cash payment, could make no claim to any advantage for failure to have the policy endorsed. The corollary is that, so far as the endorsement could accomplish anything useful to the insurer, it stood precisely where it would, had the endorsement been made. We can think of no useful end to be served by such endorsement, beyond its being the orderly method of having the record show that the policy had lapsed as a continuing contract, and was limited in duration to the period that the loan value of the policy would pay for. The endorsement would not be more than a mere matter of evidence of something that it is now fully shown did, in fact, exist. That certain formal steps were not taken to make of record what is found to be true at all events, should not work that one who had paid for insurance shall be held to have lost the insurance for nonpayment, when, in fact, he had paid for it.

There might well be a distinction if the past-due note was for the payment of a premium that had been fully earned before death of insured. The trial judge states it well:

"If a note is given to pay the premium on a policy of insurance for a particular time, and the policy is continued in force for such time, it could not be claimed, of course, that a demand of payment by the company after the default would amount to a waiver of nonpayment of premium for any period of the time not covered by the note.  *  *  *  In demanding payment of this note, defendant was not, in effect, merely demanding payment to keep the policy alive for the year ending May 22, 1911, but it was demanding payment of premium that would keep it alive until May 22, 1913; and I think that, if it amounts to a waiver at all, it amounts to a waiver of forfeiture for the full time that the policy would have been continued if the payment had, in fact, been made in cash, or the note paid when due."

He treats the matter as if the note had been paid in

cash, and holds, therefore, that the policy was automatically continued in force until assured died. We agree with the conclusion of the trial court that defendant waived the default in payment of the note when it became due, and waived its right to claim a forfeiture of the policy, and that the policy was in force and effect at the time of the death of insured. It follows there must be an affirmance.—*Affirmed.*

LADD, C. J., EVANS and PRESTON, JJ., concur.