[File No. 7207]

FRANCES E. SJOBERG, Respondent, v. THE STATE AUTOMOBILE INSURANCE ASSOCIATION, Des Moines, Iowa, Appellant.

(48 NW2d 452)

Opinion filed June 11, 1951

*Day, Lundberg, Stokes, Vaaler & Gillig,* for appellant.

*E. J. McIllraith,* for respondent.

GRIMSON, J. The plaintiff is the widow of one Herbert Vernon Sjoberg. She brings this suit against the defendant upon a $5000.00 policy, No. 11242, of accident and health insurance covering her husband, in which she was the beneficiary. Her husband was killed in an automobile accident on August 5, 1948. She made demand upon the defendants for payment under the policy. Upon denial thereof this suit was brought. Defendant answered claiming that the last premium was not paid and alleging that the policy had lapsed and was not in force at the time of the insurer's death. Plaintiff claims payment was made or in any event that forfeiture was waived. By consent the case was tried to the court without a jury. The court found that forfeiture had been waived and rendered judgment in favor of the plaintiff. Defendant appeals therefrom

The policy in suit was introduced in evidence. It provides for health and accident insurance "in consideration of the payment of premiums" and of other conditions not pertinent in this case. It provides for quarterly premiums payable on or before the 1st. day of July, October, January and April or within a grace period of ten days thereafter. It provides, "Insurance afforded by this policy shall terminate and the policy shall lapse upon the insured's failure to pay any premium hereunder on or before the due date thereof. No notice of the due date of any premium shall be required."

These provisions are valid and binding conditions of the policy. The payment of the premiums in accordance therewith is a condition precedent to the maintenance of the insurance. On failure to pay a premium the insurance lapses ipso facto, Pina v. Continental Casualty Co. 51 RI 466, 155 Atl 659, unless forfeiture is waived.

These provisions are for the benefit of the insurer. They pro-

tect him in carrying on his business. They preserve to him certain rights with regard to the insurance which is the subject matter of the contract. He may insist on these rights and the performance of the conditions created in his favor to the letter of the contract if he so desires. He may waive them, when in the interests of his business generally or on equitable grounds he desires to do so. Forfeiture is harsh and not favored in law or practice.

" 'Forfeiture for non-payment is a necessary means of protecting themselves (The insurers) from embarrassment. Unless it were enforceable the business would be thrown into utter confusion.' On the other hand we recognize that well managed insurance companies do not depend to any large extent upon forfeitures and lapses for the successful operation of the business; that it is frequently to their interest to waive forfeitures and to make advances to the policy holders in order to discourage the discontinuance of the payments of premiums." Veal v. Security Mutual Life Insurance Co. 6 Ga App 721, 65 SE 714, 716.

"Policy conditions as to forfeiture for the non-payment of premiums or premium notes are regarded as being for the benefit of the insurer, and hence may be waived by it." 15 Appelman Insurance Law and Practice, Sec 8401, Policy Conditions, p 213; Equitable Life Assurance Society v. Boisvert, 66 ND 6, 262 NW 188; Beauchamp v. Retail Merchants Assoc. 38 ND 484, 165 NW 545; National Life Insurance Co. v. Clayton, 70 Okla 116, 173 Pac 356.

Bishop on Contracts, Enlarged Edition, Sec 792, p 309, defines waiver as follows: "Waiver is where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistently with the existence of the right or of his intention to rely upon it; thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterward." See also Meyer v. National Fire Insurance Co. 67 ND 77, 86, 269 NW 845. Beauchamp v. Retail Merchants Assoc., supra.

Whether there was a waiver by the defendant of some of its rights under the policy is the question at issue. In order to

determine that a careful examination of the evidence is necessary.

The policy in question was for an initial term commencing April 15, 1946, and ending July 1, 1946, renewable "at the option of the association for further quarterly terms by the payment of renewal premiums therefor on or before the 1st day of each July, October, January, April thereafter;" or within a ten day grace period. The quarterly renewal premium amounted to $20.00. The premiums were paid and the policy renewed up to July 1, 1948. On June 21, 1948, a courtesy reminder was sent to the insured by the defendant to the effect that the premium on this policy would be due July 1, 1948. The insured responded thereto by sending his personal check to cover the premium on this policy and two other policies he held with the defendant. This was received by the defendant on July 8, well within the grace period. Thereupon defendant issued to him its official receipt as follows:

"Policy No. 16242                                         Date Due 7–1–48

RECEIPT

Thank you! We acknowledge receipt of your premium as indicated:

| Annual Premium | Semi-Annual Premium | Quarterly Premium Paid |
|:---:|:---:|:---:|
| $80.00 | $40.00 | 7–8–48 |
|  |  | $20.00 |

Herbert Vernon Sjoberg
8th Ave. N.W.
Minot, North Dakota

Accident & Health Division
The State Automobile Insurance Assn.
710 Insurance Exchange Bldg., Des Moines, Iowa

———

(Luedke Ins. Agency
Box 567
Minot, North Dakota)
Local Agent."

This receipt was mailed to the insured and produced by the

plaintiff on the trial. On July 27th the insured's check was returned to the defendant unpaid, marked, "Insufficient funds." No notice of that was sent to the insured nor was he notified of any forfeiture of the policy. Instead of that the defendant, on July 28th wrote its agent at Minot concerning the policy as follows:

"July 28, 1948.
Re: Policy No. 16242
Herbert V. Sjoberg,
18th Ave. N.W.
Minot, North Dakota.
Pol. 13684 Frances Sjoberg
Pol. 13685 Donald V. Sjoberg

Luedke Insurance Agency,
Box 567,
Minot, North Dakota.

Dear Sirs:

The $33.55 check, dated July 3, 1948, submitted in payment of the July 1, 1948 premiums on the above numbered policies has been returned by H. V. Sjoberg's bank with the notation, "Insufficient funds."

*We will appreciate your cooperation in contacting Mr. H. V. Sjoberg and securing a bankable check or other remittance.* (Italics ours.)

Very truly yours,
The State Automobile Insurance Assn.
G. R. Larimore,
G. R. Larimore, Accident &
Health Div."

GRL.

Mr. Luedke received this letter on the 1st or 2nd of August 1948. He testified: "Well, I called him on the telephone as soon as I received that letter, told him his check was bounced and he told me he was going to the bank and for me to look out the window and I did and I hollered at him and he said he would be up and take care of it." Mr. Sjoberg, the insured, was killed within three or four days thereafter. He did not get around to taking care of the check.

Payment by check is generally held conditional upon the check's being honored unless there is a special agreement to the contrary. Lloyd Mortgage Co. v. Davis, 51 ND 336, 199 NW 869, 36 ALR 465; Busch v. Manahan, 56 ND 491, 217 NW 658, Sec 41–1709 NDRC 1943; Kady v. Schutte, 72 ND 228, 5 NW2d 721, 14 Appelman on Insurance, Sec 8144, p 522.

There is authority, however, that if a check is unconditionally accepted as payment of the premium even though it turns out to be worthless the acceptance will prevent a forfeiture. 40 ALR Anno, Effect on Giving Worthless Checks, p 423, and authorities cited. Mutual Life Ins. Co. v. Chattanooga Savings Bk. (Okla) 150 Pac 190, LRA 1916 A 669 & Note.

The situation in the case of Veal v. Security Mutual Life Insurance Co. supra, was very similar to that in the case at bar. The court said: "If the holder of a policy of life insurance sends to the company on the day the premium is due a check in payment thereof, and, when the check is presented at bank, payment is refused because of lack of funds to the credit of the drawer, the company, . . . in such a case, after notice that the check has been dishonored, retains it, and, instead of repudiating the transaction by returning the check and demanding back its receipt, insisted upon the insured's paying it after the date on which the policy would otherwise have lapsed, a waiver of the punctual payment of the premium in cash results." In the case at bar the defendant did nothing towards repudiating the transaction of the check and the receipt.

In Martin v. New York Life Insurance Co. 30 NM 400, 234 Pac 673, 40 ALR 406, 410, it is said: "The insurer has the right to forfeit and declare annulled the entire contract upon default being made in such payments (of premiums). It has the further right to determine how and in what manner they shall be made. It may accept . . . the personal check of the insured as payment, and it may demand cash in settlement and payment thereof, but these are all rights of the insurer, which may be waived by it. If it receives and accepts the personal check of the insured as payment of the premium due, and issues its official receipt evidencing such payment, it thereby waives its right to declare a forfeiture of the policy, even though

the check is dishonored by the bank upon which it is drawn." The court indicates, however, that there must have been some fact or circumstance indicating agreement on the part of the insurer to accept the check as payment of the premium due. "The crux of the situation appears to be the question of acceptance." 29 Am Jur 342.

In the case at bar there is the circumstance of the unqualified receipt issued by the defendant. There is the further circumstance that when the check was returned dishonored the defendant took no steps to repudiate the check or the receipt and sent no notice of forfeiture or of provisions for reinstatement to the insured.

In contrast with the procedure of the defendant on this occasion, the evidence shows that the insured had failed to pay the premium due Oct. 1, 1947. He then, however, failed to make payment in any manner within the grace period. On Oct. 16, 1947, defendant mailed to insured the following notice:

"Policy No.                                               Date Due
   16242 ..                                                 10–1–47
                    Reinstatement Request

Your Accident & Health Insurance terminated *on the date due* (*Italics* ours). Your policy may be reinstated for the remainder of the present term, subject to your policy provisions, upon receipt and acceptance of the premium past due at the Home Office of the Association within 40 days from the date due.

Choose One of these Convenient Payment Plans:

| Annual Premium | Semi-Annual Premium | Quarterly Premium |
|----------------|---------------------|-------------------|
| $80.00 | $40.00 | $20.00 |

Herbert Vernon Sjoberg
8th Ave. N.W.
Minot, No. Dak.

10–16–47

. Sign this reinstatement request and return this notice with your remittance to:

Accident & Health Division
The State Automobile Insurance Assn.
710 Insurance Exchange Building
Des Moines, Iowa

Luedke Ins. Agency,
Box 567
Minot, No. Dak.
Local Agent."

The insured made payment of the premium on Oct. 18th but failed to sign the reinstatement request. Then the defendant wrote its agents, The Luedke Ins. Agency, stating that "The policy lapsed for non-payment of premium" and asking it to have the policy holder sign and return the reinstatement request according to the provisions of the policy. This the evidence shows was the customary procedure of the defendant on non-payment of premiums.

Thus when no payment was made and the policy ipso facto lapsed the insured was notified and urged to apply for reinstatement. When, however, the check was received as payment the policy was not treated as lapsed and even after the check was returned unpaid no notice that the policy had lapsed was sent to the insured and no suggestion for reinstatement made.

"The mere giving of a note for premium due will not work payment. But . . . the insurer payee of the note may so treat it as being the equivalent of cash, and may so deal with the insured, as to waive right to deny that the note though not paid at maturity worked an actual payment." Highland v. Iowa Life Ins. Co., 185 Iowa 1001, 171 NW 587.

Defendant relies on Sec 41–1709 NDRC 1943 which provides that the payment of a "contract shall not be complete upon the delivery to and acceptance by the creditor of the check . . . unless the parties expressly agreed that such instrument shall constitute payment." That provision of the law, however, is

for the benefit of the creditor and may, like any other provision especially for him, be waived by him. Bishop on Contracts, Enlarged Edition, Sec 94, p 38. The acts, if not the words of the defendant, indicate an agreement to accept the check in payment of the premium. The defendant had the right to waive both the provisions of the policy and of the law on matter of how payment should be made. Martin v. New York Life Ins. Co., supra.

Together with these circumstances, which indicate acceptance of the check as payment of the premium, is the further circumstance of the defendant's actions on the return of the check unhonored. It promptly, and without any notice to the insured, wrote its agent to secure a "bankable check or other remittance." There is no evidence that it returned the check to the insured. No reference was made to forfeiture of the insurance or reinstatement. No conditions were laid down as to what would happen if the check was not paid. The agent followed the directions of the letter.

The insured was a part time insurance agent and had received some schooling from the defendant. In addition to that he had this practical experience regarding his own policy. The contrast between his own experience and knowledge of the customs of the company with its actions on this particular occasion in issuing a receipt of payment and attempting collection of the check would justify him in the belief that the defendant had waived the terms of the policy with regard to payment and lapses and would allow him a little time within which to take care of the check. Benatti v. John Hancock Mutual Life Ins. Co. 290 Ill App 438, 8 NE2d 551.

It is not necessary, however, for the plaintiff to establish an estoppel on the part of the defendant. A waiver results from any unequivocal act of the insurer alone indicating an intention to waive a right. 15 Appelman's Insurance Law and Practice, Sec 8403, p 219; Equitable Life Assurance Society v. Ellis, 105 Texas 526, 152 SW 625; McDonald v. Equitable Life Assurance Society, 185 Iowa 1008, 169 NW 352, 356.

Generally it seems well settled that in the absence of special stipulations in the policy or in the instrument given in payment

of premiums, the insurer waives his right to forfeit the policy for the non-payment of such instrument by attempting to enforce its collection. 83 ALR Sec 4 Anno p 857 and cases cited; 44 LRA (NS) Note, p 371 and cases cited; 18 LRA Case Note, p 902.

In the case at bar the defendant on the occasion of a prior default followed strictly the terms of the policy. On the occasion in question instead of doing so it gave the insured a full receipt of the premium upon receiving his check. There was some delay in the presentation of the check for payment but when it was returned dishonored defendant did not repudiate the transaction but wrote his agents to contact insured to get "bankable check or other remittance." The agent notified the insured thereof. Neither the letter nor the conversation between defendant's agent and the insured referred to a forfeiture of the policy. Instead the whole tenor of both was to effect the collection of the check. Such negotiations indicate an intention to keep the policy in force. Majestic Life Assur. Co. v. Tuttle, 58 Ind App 98, 107 NE 22. They indicate defendant's election to rely upon the check rather than upon forfeiture and reinstatement.

In Buchholtz v. Leadbetter, 11 ND 473, 478, 92 NW 830 this court said: "Courts of equity regard all forfeitures with disfavor, and the rule is well settled that a party who seeks to avail himself of the right, to declare a forfeiture must act with promptness." Defendant did not do that.

"A waiver of a provision for forfeiture or ground for avoidance in a policy may be either express or implied. It may be made by express language or agreement, or by acts or conduct from which an intention to waive may be inferred, or from which a waiver follows as a legal result. Whether or not there has been a waiver depends on the facts and circumstances of each individual case." 45 CJS Sec 698, Mode of Effecting Waiver, p 662. See also 15 Appelman Insurance Law and Practice, Sec 8403, 219; Hoffman v. Mutual Fire Insurance Co. of Reading, 274 Pa 292, 117 Atl 917; National Life and Accident Insurance Co. v. Harris, Texas Civil App 78 SW2d 1041; Sovereign Camp W.O.W. v. Lee, 125 Fla 736, 171 So 526; Kentucky Central Life & Accident Insurance Co. v. White, 106 Ind App 530, 19 NE2d 872; Prudential Insurance Co. v. Bidwell, 103 Ind

App 386, 8 NE2d 123; 16 Appelman Insurance Law and Practice, Sec 9084, Elements of Waiver, p 608; Phenix Insurance Co. v. Hart, 39 Ill App 517, 36 NE 990; Beddow v. Hicks, 303 Ill App 247, 25 NE2d 93; Spiegelman v. Metropolitan Life Insurance Co., District Court of Appeals, First District, Calif., 68 Pac2d 1006.

"Forfeitures are not favored by law and the courts manifest a readiness to accept as sufficient to accomplish the purpose any circumstance that indicates an election or intent to waive the forfeiture." Knickerbocker Insurance Co. v. Norton, 96 US 241, 24 L Ed 689; U. S. Fidelity and Guarantee Co. v. Miller, 237 Kentucky 43, 34 SW2d 938; McKune v. Continental Casualty Co. 28 Idaho 22, 154 Pac 990; Linfors v. Unity Life Ins. Co. 189 SC 527, 1 SE2d 781; Alamo Health & Accident Insurance Co. v. Cardwell, Texas Civil App, 67 SW2d 337; Majestic Life Insurance Co. v. Tuttle, 58 Ind App 98, 107 NE 22, 25.

"In the humane progress of the law the doctrine of waiver, as applied to forfeitures, soon grew up and has become established as a fundamental principle. While it is a maxim that forfeitures are odious, the law is not eager to relieve against them; it takes no initiative; and in itself presents no remedy against the contract the parties have themselves made. But it is not, and should not be, slow to give effect to conduct reasonably indicative of an intention to forego the advantage of a forfeiture and relinquish its result." Equitable Life Assurance Society v. Ellis, 105 Texas 526, 147 SW 1152, 1156.

The defendant knew its right to insist on cash in payment of premium; it accepted a check in payment of the premium and issued its official receipt; that check was returned unpaid because of insufficient funds. Defendant knew its rights to forfeiture under the policy on non-payment of premium. Knowing those facts instead of repudiating the check transaction, and notifying the insured of the lapse of his policy and asking for reinstatement it wrote to its agent to secure bankable paper or other remittance. When insured was in default on the prior occasion the defendant immediately notified him of the lapse of his policy and suggested reinstatement. No such action was taken the second time. The District Court found that the defendant waived its right to forfeit the policy and elected to keep the

policy in force. We agree with this holding of the court. The judgment of the District Court is affirmed.

Morris, C.J., and Christianson and Burke, JJ., concur.

Sathre, J., did not participate.